AUGUSTUS P. LORING & another, trustees, *vs.*
MALCOLM C. STEWART, executor, & others.

Norfolk.   April 8, 1965. — June 16, 1965.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Trust,* Construction of trust instrument, Remainder.

On a proper construction in the circumstances of the terms of an irrevocable inter vivos trust established by the settlor for the benefit of his then living three children for a limited period and providing for ultimate distributions of the trust property "to . . . [him] or his estate or to any Trustee or Trustees appointed under . . . [his] will to hold the trust property for the benefit of the . . . [three] children," and of the terms of his will, executed some two months previously, establishing residuary trusts for the benefit of his minor children surviving him and the issue of children dying during minority, it was held, after the death of the settlor-testator survived by no children other than the three, that the testamentary trusts were not the trusts referred to in the inter vivos trust and that the ultimate distributions of the property of the inter vivos trust must go to the settlor-testator's estate.

PETITION filed in the Probate Court for the county of Norfolk on July 15, 1963.

---

The case was heard by *Hickey, J.*

*Dunbar Holmes* stated the case.

*James D. Dow* for Malcolm C. Stewart, executor.

*Daniel B. Bickford* (*Irving W. Cobb, Jr.,* with him) for Charles W. Bartlett, executor.

*Roger M. Thomas* for Augustus P. Loring, trustee.

*Joseph P. Warner* for the State Street Bank and Trust Company, guardian.

KIRK, J.   These are appeals from part of a decree of the Probate Court for the county of Norfolk on a petition for instructions as to the interpretation of a short term trust and a will, both executed by Louis B. Thacher, Jr. (the settlor).

On September 18, 1957, the settlor executed an irrevocable inter vivos trust which recited that its purpose was to satisfy the legal obligation of the settlor to his three living children by his first marriage and that its creation was conditioned upon the cancellation of an earlier separation agreement.   The trust provided, in relevant part, as follows: "Third: The Trustees shall pay to the person having legal custody of the children the sum of six thousand dollars ($6,000) annually, payments to be at least quarterly, for the benefit of the children during their minority, such sum to be paid from the net income and, to the extent that such income is insufficient from the principal of the trust property.   As each child becomes twenty-one years old or dies prior to his twenty-first birthday, except as provided below, payments to or for the benefit of such child shall cease and one-third of the property of this trust, principal and undistributed income as then constituted, shall be distributed to the Settlor.   In the event, however, that any such child at his or her twenty-first birthday is, in good faith, attempting to complete his or her education, the Trustees shall continue to pay to such child, or apply for such child such amount, not exceeding $1,700 annually, necessary for such child's education, until such education is completed, or until such child's twenty-fifth birthday, whichever shall first occur.   Any undistributed income not paid or applied as above provided shall be added to the

principal. . . . Fifth: Whenever by the terms of this trust the Trustees are no longer obligated to make payments as therein provided, this trust shall terminate and the Trustees shall distribute the trust property, principal and undistributed income as then constituted to the Settlor or his estate or to any Trustee or Trustees appointed under the Settlor's will to hold the trust property for the benefit of the said children, and at that time the trust shall terminate."

Less than two months earlier, by will dated July 23, 1957, the settlor had disposed of the residue of his estate as follows: "Second: After the payment of my debts, funeral expenses and expenses of administration, the remainder of my property . . . before any deductions for taxes and other charges described in Article FIFTH hereof, I dispose of as follows: 1. If my said wife shall survive me, I give to her one-third of said remainder outright. 2. After the payment of all taxes . . . described in said Article FIFTH, I direct that the remaining property of my estate be divided into as many equal shares as there are children of mine surviving me and children of mine who have predeceased me leaving issue surviving me and the resulting shares shall be disposed of as follows: a. Each share pertaining to a child of mine surviving me who has reached the age of twenty-one shall be distributed outright to such child. b. Each share pertaining to living issue of a deceased child shall be distributed outright to such issue by right of representation. c. Each share pertaining to a child of mine surviving me but under the age of twenty-one shall be distributed to my trustee hereunder to hold, manage and invest each such share as a separate trust and to pay to, or apply for the benefit of the child to whom such share pertains, the net income, and such portion of the principal as the trustee in his sole discretion deems necessary for the health, welfare, maintenance and education of such child during such child's minority. Unless sooner terminated by payment of the entire principal of such share pursuant to the foregoing provisions, then upon such

child's twenty-first birthday his share, principal and undistributed income as then constituted, shall be distributed to such child free of trust.  Should such child die during his minority, the trust property pertaining to such child shall be distributed to such child's issue surviving him by right of representation or if there be no issue surviving him shall be apportioned in equal shares among my children then living and by right of representation among the issue then living of my deceased children and shall be disposed of as herein provided for the shares pertaining to such children and issue.  d.  . . . [spendthrift clause]."

The settlor died March 24, 1958, leaving his wife (since deceased) and the three children by his previous marriage surviving him.

The single question raised by the appeals is what disposition is to be made of the trust property upon total or partial termination of the inter vivos trust under the controlling words, "to the Settlor or his estate or to any Trustee or Trustees appointed under the Settlor's will to hold the trust property for the benefit of the said children . . .." The settlor having died, the question is limited to whether the trust property shall go to the settlor's estate or to the trustee of the trusts described in Article Second, 2, of the settlor's will.

The decree, in so far as it is appealed from, provides in substance that upon partial termination of the inter vivos trust (when any child either dies or reaches the age of twenty-one, unless the child is then, in good faith, attempting to complete his education, in which case the termination should occur when that child either reaches the age of twenty-five or ceases his educational efforts, whichever should first occur) the property, principal and undistributed income of that part should be paid to the trustee of the trusts established by the settlor's will to be disposed of in accordance with Article Second, 2.  The appellees urge affirmance of the decree.  The appellants, who are the executor of the settlor's will and the executor of his wife's will, take the position that the short term trust property

should, upon termination of any part, be paid to the executor of the settlor's will.

The case is before us solely on documentary evidence and a stipulation of facts. We therefore approach the case unaffected by the decision of the probate judge. *Fiduciary Trust Co.* v. *First Natl. Bank,* 344 Mass. 1, 4, and cases cited.

Under the familiar basic principle of interpretation, the intent of the settlor is to be determined from the words used in the part of the instrument to be interpreted along with the entire instrument considered in the light of all the attendant factors and material circumstances of the settlor existing at the time of execution. *Spaulding* v. *Morse,* 322 Mass. 149, 152–153, and cases cited. *Boston Safe Deposit & Trust Co.* v. *Doolan,* 307 Mass. 233, 237. The intent so gleaned must be given effect unless some positive rule of law forbids. *Evarts* v. *Davis,* 348 Mass. 487, 489, and cases cited.

We think that the intended beneficiaries of the testamentary trusts included, but were not limited to, the "said children" who were the beneficiaries of the inter vivos trust. The appellees concede that the words "said children" used in the portion of Article Fifth of the inter vivos trust quoted above refer to the three children of the settlor by his first marriage. The provisions of Article Second, 2, of the settlor's will and the trusts created by it apply, however, to all children of the settlor who survive him, and to those who predecease him but leave issue who survive him. At the time of the execution of both the trust and the will the settlor was forty-five years of age and his wife forty-two. Although no children of the settlor were, in fact, subsequently born, there is no reason to suppose that he did not contemplate additional children.

The appellees contend, nevertheless, that the testamentary trusts are trusts to which the settlor referred in Article Fifth of the inter vivos trust. They argue that Article Fifth should be read as if a comma were inserted between the words "will" and "to." So punctuated, the

clause beginning "to hold the trust property . . ." would not describe the trustee to whom the distribution should be made but rather would describe for whose benefit the property, once distributed, should be held. The appellees contend that so reading the inter vivos trust, the property should go to separate trusts under Article Second, 2, which trusts should be for the benefit only of the settlor's children by his first marriage. The suggested interpretation assumes, however, the settlor intended that his children by his first marriage alone would benefit, even if he should have more children. The inter vivos trust, created, as it expressly was, as a successor to a separation agreement and in fulfillment of the settlor's legal obligation to the children of his first marriage, shows no general intent of the settlor to favor them over children who might be subsequently born. Nor do we find such intent elsewhere.

If Article Fifth were read as if punctuated in the manner suggested, the phrase, "to hold the trust property for the benefit of the said children" would limit the property interest acquired by the settlor, his estate, or any trustee upon termination. We perceive no indication that the settlor intended to limit his rights in the property if it were distributed to him or to his estate. We think that if he had intended such a result, he would have stated in more precise terms the nature and extent of the fiducial obligations.

The appellees advance other reasons to support their view that the testamentary trusts were the ones referred to in Article Fifth of the inter vivos trust. They point out that the instruments were executed within a period of less than two months, that the trustee of the testamentary trusts is cotrustee of the inter vivos trust, that both instruments have similar spendthrift provisions, and that both have discretionary provisions for payments for the health, welfare and education of the children. They ask us to conclude from the similarities in the trusts' provisions, from the trusts' common purpose to benefit children of the settlor, and from the fact that the testamentary trusts *could* in some

circumstances serve as a receptacle for termination payments from the inter vivos trust, that the testamentary trusts were the ones referred to in Article Fifth.

We reach a different conclusion. It is certain that at least part of the inter vivos trust fund would become distributable before all children reached the age of twenty-one because, at the time of execution of both the trust and the will, the ages of the settlor's three children were fifteen, thirteen, and ten. It was possible, through deaths or a decision by the elder children not to pursue their educations, that various partial terminations could occur before all or even any of the children reached the age of twenty-one. But, of the several possible situations which might occur through the death, attainment of majority or discontinuance of education by the three children, in only one circumstance would all the children be under twenty-one when the partial termination occurred, namely, when one child died leaving survivors under that age. In any other of the numerous hypothetical situations, at least one of the children would be twenty-one or over at the time the termination distributions were made. For any child twenty-one or over there is no provision for a trust under the will.

The Probate Court decree directs that the property, upon termination of any part of the inter vivos trust, should be distributed "to Augustus P. Loring as he is trustee of the trust under Article Second, 2 of the will of Louis B. Thacher, Jr. . . .." Since the will only provides trusts for children under the age of twenty-one, Augustus P. Loring is not a trustee for any but children under that age and there is a gap in the distribution provisions in so far as any children are twenty-one or over when the distributions occur. If the portions for children twenty-one or over go to the estate when distribution is made, then those children receive smaller beneficial shares than any who are under twenty-one at that time. To avoid such unequal treatment it would be necessary to hold that the portions for children twenty-one or over should be distributed either directly or through Augustus P. Loring to the children as

provided in Article Second, 2, a or b.  We think none of these possible dispositions of the portions for adult children can be said to be a distribution to "any Trustee or Trustees appointed under the Settlor's will to hold the trust property for the benefit of the said children . . . ."

The similarities in the inter vivos and the testamentary trusts support the view that the two trusts are to operate independently on separate property (except in so far as termination payments to the estate become part of the trust property of the testamentary trusts) in a manner harmonious with the settlor's general intent to benefit his children.  The limited extent to which the testamentary trust or trusts could serve as receptacles for the termination distributions from the inter vivos trusts makes it unlikely that they were the trusts to which the settlor referred in Article Fifth.

We conclude that, with the exception noted, the settlor did not intend that the trustee under his will acquire the inter vivos trust property.  The result is that the termination distributions from the inter vivos trust under Article Fifth should go to the settlor's estate.

The decree of the Probate Court is modified by the deletion of paragraph 6 and by the substitution of the following: That each distribution under paragraph 5 hereof shall be made to Charles W. Bartlett, as he is executor under the will of Louis B. Thacher, Jr., to be held and disposed of by him as part of Thacher's estate in accordance with the terms of Thacher's will.  The decree so modified is affirmed.

Costs and expenses of this appeal are to be determined and awarded by the Probate Court.

*So ordered.*