LOCAL UNION 134, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, Plaintiff-Appellee, *v.* CHICAGO TRANSIT AUTHORITY, Defendant.—(DISTRICT 8, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, Defendant-Appellant.)

First District (5th Division) No. 78-474

Opinion filed January 5, 1979.

856

William A. Widmer, III, of Carmell & Charone, Ltd., of Chicago, for appellant.

Stephen B. Rubin, of Asher, Greenfield, Goodstein, Pavalon and Segall, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant, District 8, International Association of Machinists and Aerospace Workers, AFL-CIO (IAM), appeals from portions of an order which (1) vacated a favorable award entered in an arbitration between IAM and defendant Chicago Transit Authority (CTA) holding that certain work was improperly contracted by CTA to members of plaintiff, Local Union 134, International Brotherhood of Electrical Workers, AFL-CIO (IBEW); and (2) directed CTA to specifically perform its contract with IBEW under which the disputed work was assigned to electricians represented by IBEW. IAM contends that the trial court's order was erroneous on one or more of the following grounds: (1) IBEW lacked standing to seek vacation of the arbitration award; (2) IBEW knew of the arbitration while it was pending yet took no action and therefore cannot now be heard to complain of the award; (3) the trial court erred in concluding that the arbitrator exceeded his authority in making the award; and (4) the trial court improperly considered the merits of the arbitration award.

This controversy began in January 1974, when CTA, the employer in this case, determined that service work on its escalators which was previously performed by outside contractors would be assigned to in-house employees. At this time, the 1971 collective bargaining agreements of CTA's mechanical and electrical employees, who were represented by IAM and IBEW respectively, were in effect. Because the escalator work had been previously handled by outside firms, neither of these agreements specifically referred to such work.

On January 25, 1974, CTA and IBEW reached an agreement in which

the newly available escalator work was assigned to in-house electrical workers. IAM objected to the assignment and instituted a proceeding under the AFL-CIO Internal Disputes Plan before an impartial umpire, charging that some of the escalator work was covered by an established work relationship between IAM and CTA and therefore should have been granted to its members. The umpire held that because the dispute involved the interpretation and enforcement of the collective bargaining agreements, it was required to be resolved under contractual grievance procedures and not under the Internal Disputes Plan.

IAM accordingly filed a grievance with CTA. At about this same time, IAM and IBEW were negotiating their 1974 contracts with CTA, and IAM pressed its claim to the escalator work during these negotiations as well. IAM was unsuccessful, however, and the CTA awarded the escalator service jobs to the electricians in the 1974 IBEW contract. IAM nonetheless continued with its grievance, claiming that the assignment of the jobs to IBEW violated its 1971 collective bargaining agreement. Eventually, IAM and CTA chose an arbitrator and scheduled a hearing. After the arbitrator had been chosen, an attorney for CTA verbally informed IBEW attorneys of the pending hearing, stating "you might have an interest in these proceedings." He also suggested that IBEW might seek to enjoin the arbitration, but IBEW chose not to do either.

On October 7, 1976, the arbitration hearing was held with only CTA and IAM participating. The arbitrator found that the grant of all escalator work to IBEW violated IAM's collective bargaining agreement and, in his award, ordered that IAM and CTA engage in negotiations for the purpose of establishing composite escalator work crews that would contain IAM members. Such negotiations were conducted, but the parties were unable to reach an agreement. The arbitrator thus entered a second award on July 8, 1977, which required composite crews of one electrician and one machinist and, if necessary, another machinist.

On July 12, 1977, plaintiff IBEW brought this suit against defendant CTA seeking an order requiring CTA to specifically perform its 1974 contract with IBEW which granted the escalator work to it. IAM intervened as a defendant and counterclaimed against CTA, alleging that its contract with CTA was violated by the assignment of escalator work to IBEW and requesting an order requiring CTA to specifically perform that contract. CTA also filed a counterclaim against IAM and IBEW, essentially requesting the court to determine how the jobs should be assigned to restrain the unions from seeking further arbitration of the matter and to hold CTA harmless from any liability arising from the dispute. Plaintiff IBEW then filed an amended complaint additionally seeking (1) vacation of the arbitration award, pursuant to section 12 of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, par. 112) on the

ground that the arbitrator exceeded his authority in ordering a composite crew; and (2) an order directing CTA, IAM, and IBEW to engage in tripartite arbitration of the work assignment dispute.

After a hearing, the trial court entered an order requiring that CTA specifically perform its 1974 contract with IBEW; that IAM's counterclaim be dismissed; that IBEW's request for tripartite arbitration be denied; and that the arbitrator's award be vacated. Defendant IAM appeals from that order.

OPINION

■■ Defendant IAM's contentions on appeal all concern the trial court's decisions regarding the arbitration award. We feel, however, that these questions have been rendered moot by IAM's failure to raise as an issue in its brief the propriety of that part of the trial court's order directing CTA to specifically perform its contract with IBEW. By its failure to contend that the order for specific performance was erroneous, IAM has waived any argument on that point under Supreme Court Rule 341(e)(7). (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).) Thus, there no longer exists any question as to the assignment of the escalator work because specific enforcement of the contract necessarily requires that the escalator work be performed by IBEW members. Since IAM has not objected to the specific performance order and hence the performance of the escalator work by IBEW, the question of whether the arbitrator's award was properly vacated is moot because there now exists no actual controversy as to job assignments. (*Chicago City Bank & Trust Co. v. Board of Education* (1944), 386 Ill. 508, 519, 54 N.E.2d 498, 503, *cert. denied sub nom. Hutchinson v. Board of Education* (1944), 323 U.S. 734, 89 L. Ed. 588, 65 S. Ct. 70; *People v. Dawson* (1972), 5 Ill. App. 3d 975, 976, 284 N.E.2d 391, 392; *Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 9, 206 N.E.2d 500, 505.) Accordingly, we would be justified in dismissing this appeal on the basis of mootness alone. *In re Mullins* (1975), 35 Ill. App. 3d 47, 341 N.E.2d 140; *Hazdra Homes, Inc. v. County of Du Page* (1975), 27 Ill. App. 3d 685, 326 N.E.2d 561; *Hill v. Murphy* (1973), 14 Ill. App. 3d 668, 303 N.E.2d 208.

■■ In any event, however, we feel that the trial court properly vacated the award because the arbitrator exceeded his authority in ordering a composite crew. Initially, it should be noted that plaintiff IBEW sought to vacate the award under section 12(a)(3) of the Uniform Arbitration Act, which provides:

"(a) Upon application of a party, the court shall vacate an award where:
* * *

(3) The arbitrators exceeded their powers." (Ill. Rev. Stat. 1977, ch. 10, par. 112(a)(3).)

However, such ground for vacatur is inapplicable in cases, such as the one at bar, in which the award was entered as a result of an arbitration agreement embodied in a collective bargaining contract, as stated in subsection (e):

> "(e) Nothing in this Section or any other Section of this Act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be those which existed prior to the enactment of this Act." (Ill. Rev. Stat. 1977, ch. 10, par. 112(e).)

Thus, it is necessary that we look to the Rule as it was prior to the enactment of the Uniform Arbitration Act, and we find it to be that the courts had the power to vacate such awards where the arbitrator exceeded his authority; thus, the trial court in the instant case had the authority to vacate the award on those grounds. *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1974), 22 Ill. App. 3d 1066, 318 N.E.2d 202, *rev'd on other grounds* (1976), 62 Ill. 2d 470, 343 N.E.2d 473; *Board of Education v. Johnson* (1974), 21 Ill. App. 3d 482, 315 N.E.2d 634.

■■ As to whether the trial court here properly found that the arbitrator exceeded his authority, we note that an arbitrator's power or authority is defined and determined by the arbitration agreement. (*Vasilakis v. Safeway Insurance Co.* (1977), 46 Ill. App. 3d 369, 361 N.E.2d 1; *Rosee v. Board of Trade* (1976), 43 Ill. App. 3d 203, 356 N.E.2d 1012, *cert. denied* (1977), 434 U.S. 837, 54 L. Ed. 2d 99, 98 S. Ct. 127; *West Towns Bus Co. v. Street Electric Railway & Motor Coach Employees Division 241* (1960), 26 Ill. App. 2d 398, 168 N.E.2d 473; *Taylor v. Scott, Foresman & Co.* (1913), 178 Ill. App. 487.) Here, the portion of the collective bargaining agreement between CTA and IAM which formed the arbitration agreement, and pursuant to which the arbitration in question was conducted, provided:

> "*SECTION 1.   PURPOSE* For the purpose of facilitating the peaceful adjustment of differences that may arise from time to time, and to promote harmony and efficiency to the end that the [CTA], its employees and the general public may mutually benefit, the [CTA] and [IAM] agree to meet and deal with each other through their duly accredited representatives on all differences and grievances, including the interpretation of this Agreement, and should there be any differences or grievances that cannot be amicably adjusted between the respective properly accredited representatives of the [CTA] and of [IAM], the same shall be submitted to a temporary Board of Arbitration."

We think it is clear that an arbitration based upon the above agreement could lawfully affect only the rights of the parties to the agreement—here, IAM and CTA. In the instant case, however, the arbitrator's award of a composite crew deprived IBEW members of jobs which had already been committed to them by the 1974 contract. Thus, because IBEW was not a party to this agreement upon which the arbitration was based, the arbitrator had no authority to enter this award which infringed upon the contractual rights of IBEW.

■ Furthermore, the fact that the arbitrator appears not to have considered the terms of IBEW's contract in reaching his decision renders this award unenforceable. In *Transportation-Communication Employees Union v. Union Pacific R.R. Co.* (1966), 385 U.S. 157, 17 L. Ed. 2d 264, 87 S. Ct. 369, the Transportation-Communication Employees Union, representing railway telegraphers, complained that certain jobs performed by clerks, represented by the Brotherhood of Railway Clerks, rightfully belonged to the telegraphers under their collective bargaining agreement. The telegraphers sought tripartite arbitration of the matter before the Railroad Adjustment Board, as authorized by section 3 first (i) of the Railway Labor Act (45 U.S.C. §153 first (i) (1976)). The Board properly notified the clerks' union of the proceedings, although they refused to participate. At the hearing, the Board considered only the telegraphers' contract and awarded the positions to the telegraphers on that basis. Significantly, the court stated:

"In order to interpret such an agreement [the telegraphers' contract] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments." (385 U.S. 157, 161, 17 L. Ed. 2d 264, 268, 87 S. Ct. 369, 371.)

The court accordingly ordered that the Board again give notice to the clerks and, regardless of whether they chose to appear, arbitrate the matter in light of both contracts. Thus, in the case at bar, we believe the arbitrator improperly rendered a decision which affected IBEW's contractual rights without giving due consideration to that contract.

Since IBEW was not a party to the contract upon which the arbitration was based, and because IBEW's contract was not considered in making the award, the arbitrator exceeded his authority in entering an award which affected IBEW's contractual rights. We therefore hold that the trial court properly vacated the award.

■ Defendant IAM contends, however, that the trial court erred in vacating the award because IBEW was not a "party" to the arbitration and therefore lacked standing to seek vacation under section 12 of the

Uniform Arbitration Act. (Ill. Rev. Stat. 1977, ch. 10, par. 112.) It appears, however, that IAM did not raise this defense in its answer or in any other manner in the trial court, and the cases clearly provide that a defendant will not be permitted to argue on appeal a defense not interposed in its answer. (*Flatow v. Amalgamated Trust & Savings Bank* (1968), 97 Ill. App. 2d 357, 240 N.E.2d 161; *Kioutas v. City of Chicago* (1965), 59 Ill. App. 2d 441, 208 N.E.2d 587; *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97.) Therefore, IAM's assertion of the standing issue at this time does not require us to reverse.

■■ Moreover, we feel that plaintiff IBEW did have standing to seek vacatur of the award. In addition to seeking to vacate, IBEW in its complaint requested an order directing CTA to specifically perform its 1974 contract with IBEW as well as an order enjoining CTA from breaching this agreement, which is in substance a request for specific performance. (*Ulrey v. Keith* (1908), 237 Ill. 284, 86 N.E. 696; *Tucker v. Carter Oil Co.* (1942), 315 Ill. App. 264, 43 N.E.2d 99; *Peru Wheel Co. v. Union Coal Co.* (1938), 295 Ill. App. 276, 14 N.E.2d 998.) Beyond doubt, IBEW had standing to seek such specific performance inasmuch as it was a party with CTA to the contract. In ordering this relief, we think the trial court had the authority to vacate the award if it felt this was necessary to assure specific performance of the agreement. Thus, by possessing standing to seek specific performance of the 1974 contract, IBEW also had standing to seek vacation of the arbitration award.

■■ IAM next contends, without citing any authority, that since IBEW knew of the pending arbitration months before the scheduled hearing but took no action, it cannot now be heard to complain that the award adversely affected it. We disagree. IBEW would have been obligated to join in the arbitration if it had been properly brought before the arbitrator by CTA pursuant to their collective bargaining agreement. However, in the instant case, CTA did not take the steps necessary to bring IBEW into the arbitration, but merely advised IBEW's attorneys that they "might have an interest in these proceedings," and this only *after* CTA and IAM had chosen an arbitrator. Even if the arbitrator otherwise had the authority to enter an award affecting IBEW (and we hold he did not), we believe this absence of proper notice rendered the award unenforceable. (*Macdonald v. Bond* (1902), 195 Ill. 122, 62 N.E. 881; *Alexander v. Cunningham* (1884), 111 Ill. 511; *Ingraham v. Whitmore* (1874), 75 Ill. 24; 5 Am. Jur. 2d *Arbitration & Award* §108, at 600; §114, at 604-05 (1962).) Because such notice was so insubstantial as to render any award entered unenforceable, it can hardly be sufficient to estop plaintiff IBEW from instituting this suit. We realize that IBEW might have brought itself into this arbitration under its own initiative through its collective bargaining

agreement with CTA. However, it appears that IBEW had no reason to seek arbitration of the work assignment issue at that time because it had already signed a contract with CTA wherein the escalator work was granted to electricians. It had no reason to believe that its contractual rights would be jeopardized in an arbitration proceeding between CTA and another union. Therefore, we hold that plaintiff IBEW cannot be charged with any dilatory or otherwise improper behavior with respect to the arbitration.

Defendant IAM relies on *Carey v. Westinghouse Electric Corp.* (1964), 375 U.S. 261, 11 L. Ed. 2d 320, 84 S. Ct. 401, as supporting its argument that the arbitrator had the authority to award a composite crew even in IBEW's absence. We do not believe that *Carey* so holds, however. In that case, the International Union of Electrical, Radio & Machine Workers (IUE) and another union known as Federation entered into collective bargaining agreements with Westinghouse wherein IUE represented all production and maintenance employees, excluding salaried technical employees, and Federation represented all salaried technical employees. IUE filed a grievance with Westinghouse charging that certain Federation members were performing production and maintenance work at the plant. Westinghouse, however, refused to arbitrate the dispute, and IUE brought suit seeking an order compelling arbitration between Westinghouse and IUE. The United States Supreme Court held that, viewing the situation as a work assignment dispute, the National Labor Relations Act (29 U.S.C. §151 *et seq.* (1976)) authorized courts to compel arbitration in that particular instance. Significantly, the court stated:

> "Grievance arbitration is one method of settling disputes over work assignments; and it is commonly used, we are told. To be sure, only one of the two unions involved in the controversy has moved the state courts to compel arbitration. *So unless the other union intervenes, an adjudication of the arbiter might not put an end to the dispute.* Yet the arbitration may as a practical matter end the controversy or put into movement forces that will resolve it." (Emphasis added.) (375 U.S. 261, 265, 11 L. Ed. 2d 320, 324, 84 S. Ct. 401, 405-06.)

Thus, the court ordered arbitration between IUE and Westinghouse because it felt that this would "put into movement forces" that would hasten resolution of the dispute; yet, it realized that the award itself might have been ultimately unenforceable because of Federation's noninvolvement in the proceeding. We therefore do not feel that *Carey* supports IAM's argument that the award resulting from its arbitration with CTA is enforceable against IBEW.

IAM's final contentions seem to be based on a misinterpretation of the trial court's rulings. It appears to argue first that while courts in reviewing an arbitration proceeding can vacate the award if the arbitrator exceeded his authority, they cannot make any determination on the merits of the award; that in the instant case the trial court, after vacating the award, reviewed the merits of those matters before the arbitrator; that on the basis of that review the court directed that an award be entered which would grant the escalator work to IBEW; and that the court in so doing exceeded its permissible scope of review. IAM argues in the alternative that should this court hold that the trial court was entitled to review the merits of the award, we should nonetheless reverse because the evidence before the arbitrator clearly indicated that the disputed work was 70% mechanical and thus properly assignable to IAM.

These arguments are made in a vacuum, however, because it does not appear from the record that the trial court took any action on the award itself once it was vacated. The court did, of course, order specific performance of CTA's 1974 contract with IBEW, which had the same effect as though the court had reviewed the merits of the award, determined that it was erroneous, and ordered that a different award be entered. And in so doing, the trial court, of course, considered evidence similar to that presented to the arbitrator. But the order for specific performance was based on plaintiff's express prayer for that relief and was not grounded on any request to modify the award. Therefore, since the trial court did not in fact take those actions to which IAM ascribes error, we will not consider these arguments.

For the reasons stated above, the judgment of the trial court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.