WYMAN-GORDON COMPANY, Plaintiff-Appellant, *v.* WILLIAM A. BOWLING *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 79-1592

Opinion filed January 14, 1981.

C. R. Gangemi, Jr., and David A. Genelly, both of Chicago (Winston & Strawn, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Joseph D. Keenan, III, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Wyman-Gordon Company, appeals from the trial court's interlocutory order affirming the Director of Labor's decision that certain defendants are not ineligible for unemployment benefits under section 604 of the Unemployment Insurance Act (Ill. Rev. Stat. 1975, ch. 48, par. 434).

Defendants-claimants are several unions comprised of machinists, electrical workers and die sinkers, who were unemployed during certain intervals from November 6, 1975, to February 23, 1976, due to a steelworkers' strike at plaintiff's plant in Harvey, Illinois. A referee of the Unemployment Insurance Bureau made a determination that defendants were not ineligible for benefits under the labor dispute disqualification section, section 604, of the Act because they were not participating in, directly interested in, or financing the labor dispute. The Director of Labor subsequently upheld the referee's decision.

■■ At the outset, we hold that plaintiff has waived its right to challenge the decision as to any of the unions, except the Die Sinkers, by its failure

to raise these issues as to all unions in its brief, as required by Supreme Court Rule 341. (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7).) Plaintiff's brief begins:

"For purposes of this appeal, however, Appellant wishes to focus the attention of this Court on the activities of the Die Sinkers who present the clearest case of *voluntary* unemployment. Accordingly, it has chosen not to address the actions of the Machinists and Electricians to avoid unnecessarily burdening this Court with a cumbersome record and the somewhat more difficult judgment of violation in those cases. In this manner, the Court may address the core legal issue to be determined: * * *."

Because plaintiff has chosen not to address its argument to any union except the Die Sinkers, we hold that plaintiff has waived any arguments pertaining to all other union-defendants. *Electrical Workers Local 134 v. Chicago Transit Authority* (1979), 68 Ill. App. 3d 855, 386 N.E.2d 303.

■ We also wish to comment briefly on the State's contention that plaintiff's failure to name individually each member of all the unions in its complaint for review mandates a dismissal of the appeal. Where, as here, a party is effectively represented, he is not a necessary party; failure to name him in the complaint in such an instance does not require a dismissal. (*Cales v. Dressler* (1924), 315 Ill. 142, 146 N.E. 162.) The unions in the present case, at all relevant times, continuously and effectively represented their members throughout these proceedings, and failure to name each member individually does not require dismissal of the action on this appeal.

Section 604 of the Act provides in pertinent part:

"§604. Labor Dispute. An individual shall be ineligible for benefits for any week with respect to which it is found that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. * * * This Section shall not apply if it is shown that (A) the individual is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work and (B) he does not belong to a grade or class of workers of which immediately before the commencement of the stoppage there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute; *provided, that a lockout by the employer or an individual's failure to cross a picket line at such factory, establishment, or other premises shall not, in itself, be deemed to be participation by him in the labor dispute.*
* * *"

The underscored portion of the section represents a 1975 amendment to the Act.

Defendants urge that as a result of the 1975 amendment, a claimant's failure to cross a picket line does not in itself disqualify him from unemployment benefits whether the failure to cross is caused by fear of violence or union principles. Plaintiff maintains that a claimant is eligible for unemployment benefits only if the failure to cross the picket line is caused by a reasonable fear of bodily harm. Because we believe the record supports a finding that there was a reasonable fear of physical violence which justified the Die Sinkers' refusal to cross the picket line, we deem it unnecessary to consider the parties' conflicting interpretation of the effect of the 1975 amendment on the present issue.

When the refusal to cross a picket line is premised on a reasonable fear of bodily harm, the courts have uniformly held that there was no participation in the strike and that claimant is eligible for benefits. (*Sangamo Electric Co. v. Donnelly* (1962), 26 Ill. 2d 348, 186 N.E.2d 230; *Shell Oil Co. v. Cummins* (1955), 7 Ill. 2d 329, 131 N.E.2d 64; *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 385 N.E.2d 793.) Due to the highly coercive and volatile nature of a strike, a claimant need not experience actual bodily harm; it is sufficient that he experiences a reasonable fear of such harm under the circumstances. *Shell Oil Co. v. Cummins.*

On November 18, 1975, plaintiff obtained a temporary restraining order in the trial court limiting and controlling picketing by the steelworkers. In its sworn motion for that temporary restraining order, plaintiff's agents stated, among other things:

> "On November 6, 1975, the Union, contrary to its representations and in violation of law, engaged in mass picketing at the gates to the Plaintiff's plant (see Exhibit 2 through 5). When machinists, electricians and die sinkers arrived at work at their normally scheduled starting time, they did not attempt to cross the mass picket line. Representatives stated that their men were afraid to chance physical confrontation with the Steelworkers Union pickets."

Photographs depicted the strikers walking the picket line shoulder-to-shoulder, armed with clubs. On December 11, 1975, after more violence had erupted at the renewal of mass picketing, plaintiff again filed pleadings alleging violence by the strikers and seeking a rule to show cause for violation of the temporary restraining order. At the present hearing before the agency, plaintiff introduced evidence that all the violence occurred at one gate to its plant, which was a gate not used by Die Sinkers. Plaintiff also stated that its pleadings were inaccurate in setting forth fear of violence by Die Sinkers. Plaintiff offered the testimony of two Die Sinker employees who stated they refused to cross the picket line out of prin-

ciples, not out of fear; there were approximately 70 Die Sinkers employed by plaintiff at the plant in question. The evidence as to whether the Die Sinkers were restrained from working by a reasonable fear of physical violence was conflicting, and the agency's determination of such factual disputes may not be overturned by this court. *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342 N.E.2d 298; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814.

Plaintiff agrees that the evidence concerning the Die Sinkers' fear of violence was controverted, but argues that it is a sham argument not really pursued by defendants in these proceedings. Plaintiff also maintains that the fear of violence was ignored by the agency in reaching its decision that the defendant unions did not participate in the strike. We do not agree. It was defendants' exhibits in the present proceedings which disclosed plaintiff's sworn pleadings expressly reciting that the Die Sinkers were afraid to cross the picket line. Moreover, in affirming the referee's decision the Director of Labor stated: "Some of the men felt menaced, even though there was no express threats, as such. Such fear can be easily understood upon examination of the photographs showing number of pickets and presence of clubs." The decision of the Director of Labor that the claimants did not participate in the strike was not contrary to the manifest weight of the evidence.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.