BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, COUNTY OF COOK, Plaintiff-Appellant, *v.* COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, IFT, AFT, AFL-CIO, Defendant-Appellee.

First District (4th Division)    No. 80-2593

Opinion filed December 17, 1981.—Rehearing denied January 22, 1982.

LINN, J., dissenting.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Siegel, of counsel), for appellant.

Gilbert Feldman, of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, the Board of Trustees of Community College District No. 508 (Board) filed an action in the circuit court of Cook County seeking to overturn an arbitrator's award. The defendant, the Cook County College Teachers Union, Local 1600 (Union), filed a motion for summary judgment. The Board also moved for summary judgment. The trial court granted the Union's motion for summary judgment, from which the Board appeals.

On appeal, the Board contends that the trial court erred in affirming

the arbitrator's award because the award was contrary to the express terms of the collective bargaining agreement.

The instant dispute concerns the arbitrator's interpretation of article VIII H.1 of the collective bargaining agreement between the Union and the Board. This provision provides in pertinent part:

"Registration duties. Registration shall last no longer than one week at all [city] colleges. Duties of faculty members during registration period shall consist of counseling, programming and other professionally related duties."

The collective bargaining agreement also provided for binding arbitration of grievances filed by the Union. The relevant portions of this provision are as follows:

"(i) The decision of the arbitrator will be accepted in good faith as final by both parties to the grievance and both will abide by it.

(j) The arbitrator shall limit his decision strictly to the application and interpretation of the provisions of this Agreement and he shall be without power or authority to make any decision:

(1) Contrary to, or inconsistent with, or modifying or varying in any way, the terms of this Agreement; or

(2) Limiting or interfering in any way with the powers, duties and responsibilities of the Board under applicable law."

During the registration period in the fall of 1976, librarians at the Kennedy-King College were assigned to program students in a special problems category and to work with the counselors. They claimed they did so without protest as a gesture of good will toward the new school president. Prior to this time, librarians at Kennedy-King and all other city colleges did not participate in registration. In the spring and fall of 1977, librarians at Kennedy-King College were again assigned to and did assist in the registration.

The testimony of Noel Grego, a librarian at Kennedy-King, describing these duties was attached to the Board's motion for summary judgment. According to Grego, the librarians were assigned to work with the counselors in programing students in the "special problems" category. These students had been programmed by other faculty members for courses and, although the students had paid for the courses, the courses were no longer available. Faculty members at the special problems table would then find other courses for the students to take. Grego asserted that his experience as a librarian did not equip him with any particular skill or qualification or background to perform this function and that the librarians worked in a subordinate level to the counselors.

The Union filed grievances for the 1977 spring and fall assignments. The Board rejected the grievances. The matter then went to arbitration to decide whether the registration dues assigned to the librarians violated the

terms of the agreement, particularly article VIII H.1, which provides, "[d]uties of faculty members during registration period shall consist of counseling, programming and other professionally related duties."

The arbitrator found that librarians were faculty members within the meaning of the agreement, but that the "testimony, evidence and arguments of the parties establish the fact that the assignment of the librarians * * * to registration functions was in violation of Article VIII H.1 and Article XI of the contract * * *." The circumstances surrounding article XI will be discussed subsequently. The arbitrator's reasons for this finding were also set forth in the award:

"It is evident that the duties of librarians differ from other disciplines insofar as their professional services are concerned. In general, other disciplines were assigned to registration duties which were primarily related to their professional responsibilities. In the case of the librarians, it appears that there was no such relationship when registration duties were assigned to them, and thus their registration duties were not related to their professional duties. This may account for the fact that Kennedy-King librarians were not previously assigned to registration duties and that no other librarians throughout the system received such assignments. While it is true that the librarians are faculty members within the meaning of Article VIII H.1, it must be noted that the said Article refers to the duties of faculty members during registration periods as consisting of 'counseling, programming and other professionally related duties.' The librarians do not fit into such a pattern."

The circuit court affirmed the award of the arbitrator. This appeal followed.

The Board's argument on appeal is that the trial court erred in affirming the arbitrator's award because the award was contrary to the express terms of the agreement between the parties. Specifically, the Board contends that the award had the effect of modifying the terms of the agreement, that it was based upon a nonexistent "past practices" clause which the arbitrator mistakenly believed was included in article XI, and that it interfered with the discretionary powers of the Board.

■■ Arbitration is a favored method of settling disputes. Its object is to achieve a final disposition of disputes in an easier, more expeditious and less expensive manner than by litigation. (*Brennan v. Kenwick* (1981), 97 Ill. App. 3d 1040, 425 N.E.2d 439.) The interpretation of a collective bargaining agreement is a function of the arbitrator. A court will review an arbitrator's contract interpretation only to determine if the arbitrator's award drew its essence from the agreement so as to prevent a manifest disregard of the agreement between the parties. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412,

386 N.E.2d 47.) " '* * * It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' [Citation.]" (74 Ill. 2d 412, 421, 386 N.E.2d 47, 51.) However, if the arbitrator's award does not draw its essence from the collective bargaining agreement, "courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361.

The Board takes the position that no interpretation of the agreement was necessary. Rather, the provision of the agreement with respect to registration duties is clear and unambiguous and specifies three categories of duties which all faculty members are required to undertake: (1) counseling; (2) programming; and (3) other professionally related duties. The arbitrator found that librarians are faculty members and therefore, the Board argues, their assignment to programming during registration did not violate the agreement. The Board maintains that the arbitrator's finding that registration duties assigned to the librarians were not related to their professional duties varied the agreement to read "[d]uties of faculty members, *other than librarians,* during registration period shall consist of counseling, programming and other professionally related duties." If librarians had been assigned duties other than counseling or programming, then, the Board asserts, a third category of "other professionally related duties" would apply, and the question would be presented whether such other duties were professionally related.

The Union, on the other hand, argues that the arbitrator was required to interpret the registration duties clause. To do so, the arbitrator first had to decide whether all assigned registration duties were required to be "professionally related duties." The key word in the clause, in the Union's view, is the adjective "other" which is used when a comparison of something in the same class is needed but not when a comparison is with things of a different class. The second issue to be decided, the Union maintains, is whether the registration duties had to be professionally related to the particular faculty member who received the assignment. The Union urges that it established that in no other instance had any faculty member been required to perform registration duties unrelated to his or her area of specialization. The Union also argues that the purpose of the clause was to protect the professional integrity of faculty members and to prevent the use of librarians as clerical assistants to aid counselors in counseling students, a duty which the librarians had no professional competence to perform.

■■ We agree with the Union that interpretation of the registration duties clause was crucial to the resolution of the conflict between the parties and

that the arbitrator's award was drawn from the essence of the agreement. In our view, the issue before the arbitrator was whether or not the clause required that the duties assigned to a faculty member be related to his or her particular area of expertise. We disagree with the Board's rationale that only its interpretation can be accepted. After noting that other members of the faculty were given counseling and programming duties related to their respective fields of expertise, the arbitrator determined that the clause required that registration duties assigned to librarians also be related to their particular professional skills. Whether this court's opinion as to the proper interpretation of the clause may have been different from that of the arbitrator is of no consequence. The parties bargained for the arbitrator's interpretation and this is what they received.

Next, the Board contends that the arbitrator's award is invalid because it was based upon a nonexistent provision which the arbitrator mistakenly believed was contained in article XI of the agreement. The provision in question, which the Union terms a "past practices" clause, was quoted by the arbitrator in his award as follows: "During the life of this Agreement, the Board will continue its existing policies and uniform practices with reference to salaries, fringe benefits and working conditions of faculty members which are not specifically covered by this Agreement." As the Board correctly asserts, there was no such provision in the contract between the parties. The Union filed a counterclaim in the trial court for reformation of the contract to include such a provision, alleging that it had been included in prior contracts but was omitted from the 1975 contract through a mutual mistake. The Board filed an answer denying the allegations of mutual mistake and the Union withdrew the counterclaim. The Board argues that the arbitrator predicated his decision upon this clause, which was not a part of the contract, and that the award is therefore a nullity.

We are not persuaded by this argument. It is apparent from the arbitrator's award that he found two independent and separate contract violations which constituted alternative grounds for sustaining the grievance. The arbitrator's finding that the Board violated article VIII H.1 is sufficient to support its award in favor of the Union regardless of the fact that his finding as to article XI is unsupported by the contract.

■■ The Board then argues that even accepting as correct the arbitrator's decision that the registration duties clause does not *require* librarians to perform counseling and programming duties, the Board still has discretionary power to assign those duties to librarians absent a provision in the collective bargaining agreement on that subject. Therefore, the award contravenes the provision of the agreement which prohibits the arbitrator from "[l]imiting or interfering in any way with the powers, duties and responsibilities of the Board * * *."

By making this argument, the Board appears to misconstrue the decision of the arbitrator. In its presentation to the arbitrator, the Union attempted to establish that the purpose of the registration duties clause was to protect the professional integrity of each faculty member in connection with the assignment of registration duties. The Union contended that requiring the librarians to work as assistants to the counselors in the performance of duties unrelated to the skills of the librarians would be demeaning to their professional integrity. The arbitrator, after hearing the evidence, decided that by requiring the librarians to perform registration duties, the Board violated the collective bargaining agreement. Clearly, the Board cannot argue that it has discretionary power to violate the contract between the parties.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

ROMITI, P. J., concurs.

JUSTICE LINN, dissenting:
I respectfully dissent.

The parties agree that the standard of review of an arbitrator's contract interpretation is to determine only if the arbitrator's contract drew its essence from the agreement so as to prevent a manifest disregard of the agreement between the parties. (*Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47.) As noted, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. " 'It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.' [Citation.]" 74 Ill. 2d 412, 421, 386 N.E.2d 47, 51.

The Board maintains, and I agree, that the provision of the agreement with respect to registration is clear and unambiguous and specifies three categories of registration duties: (1) counseling; (2) programming; and (3) other professionally related duties. The arbitrator found that librarians are faculty members and therefore, the Board argues, their assignment to programming during registration did not violate the agreement. The Board maintains, and I further agree, that the arbitrator's finding that registration duties assigned to the librarians were not related to their professional duties varied the agreement to read "Duties of faculty members, other than librarians, during registration period shall consist of counseling, programming and other professionally related duties." If

librarians had been assigned duties other than counseling or programming, then, the Board asserts, a third category of "other professionally related duties" would apply, and a question would be presented whether such other duties were professionally related.

I am persuaded by the Board's argument that programming during registration is a contractual duty of faculty members and that whether or not it is professionally related is not relevant to this contractual duty. Thus, the arbitrator's finding that the programming duties assigned to the librarians "were not related to their professional duties" varies the terms of the agreement. The essence of the agreement, in my view, is that there are other undefined professionally related duties aside from programming and counseling which faculty members must perform during registration but that the duties of faculty members, which includes librarians, clearly include programming and counseling. It is undisputed that the librarians at Kennedy-King College did perform programming duties during registration. I believe the arbitrator exceeded his authority under the contract. The award manifestly disregards the agreement between the parties and varies the terms of the agreement.

> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. \* \* \* [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprises Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 4 L. Ed. 2d 1424, 1428, 80 S. Ct. 1358, 1361.

See also *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin, Inc.* (6th Cir. 1979), 594 F.2d 1093.

The Union, nevertheless, argues that to interpret the clause, the arbitrator first had to decide whether all assigned registration duties were required to be "professionally related duties." As noted, the key word in the clause, in the Union's view, is the adjective "other," which is used when a comparison of something in the same class is needed but not when a comparison is with things of a different class. The second issue, the Union maintains, is to whom must the registration duties be professionally related and the answer is the faculty member who received the assignment. The Union urges that it established that in no other instance had any faculty members been required to perform registration duties unrelated to their area of specialization. From the record before us on appeal, I am unable to determine that the Union did so establish that fact. The Union also argues that the purpose of the clause was to protect the professional integrity of faculty members and to prevent the use of librarians as

clerical assistants to counselors to assist in counseling, a duty which the librarians had no professional competence to perform.

There is nothing in the record before us which describes the librarians registration duties as anything other than programming. Although Grego testified that librarians had no special training or skill to assist with programming, he did not describe the registration duties as clerical in nature. In my view, the plain language of the clause requires faculty members to perform programming and counseling during registration. Librarians admittedly are faculty members, and hence, fall within the class of employees who must perform programming and counseling duties. Consequently, I believe the union's argument is without merit.

In view of my conclusion that the arbitrator's award is not drawn from the essence of the agreement, I would find no need to address the other issues raised by the Board. In my view, the arbitrator's interpretation of the clause varies the terms of the agreement and consequently the arbitrator exceeded his authority under the agreement and the award must be vacated. *Local 134, International Brotherhood of Electrical Workers v. Chicago Transit Authority* (1979), 68 Ill. App. 3d 855, 386 N.E.2d 303; *In re American Arbitration Association* (1969), 109 Ill. App. 2d 370, 248 N.E.2d 756.

It is my conclusion that the order of the circuit court of Cook County be reversed, the award of the arbitrator be vacated, and judgment for plaintiffs be entered.