BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 4 CHAMPAIGN COUNTY, Plaintiff-Appellee, *v.* CHAMPAIGN EDUCATION ASSOCIATION, Defendant-Appellant.

(No. 12153; ▮▮▮▮▮▮)

Fourth District—November 21, 1973.

336

Drach, Terrell and Deffenbaugh, P.C., of Springfield, for appellant.

Franklin, Flynn and Palmer, of Champaign, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The Education Association here appeals from an order of the trial court which set aside an arbitration award in its favor against the Board of Education.

The Association, on behalf of its member teachers, originally filed a grievance with the employing school district pursuant to a collective bargaining agreement previously entered into by the parties. The grievance arose from an adjusted scheduling of lunch periods in the schools of the district involving lengthened and staggered lunch periods for different age groups. This was achieved by varying schemes and time schedules at the several schools in the district. In simplest terms, the new system gave most students 50 minutes to 1 hour between morning and afternoon classes. The time in excess of that used for eating lunch being an extra "recess" for the lower grades, and an opportunity to participate in various extra-curricular functions for the upper grades. Each teacher continued to have a 30-minute duty free lunch time, but during the 20 to 30-minute extended lunch break or activity time the teachers were required to be available for supervision on a rotating basis. The Association contended that this was tantamount to extending the lunch period to an hour in contrast to the former 30-minute period while the Board of Education argued that the "open lunch" program did not change the 30-minute lunch period, but rather inserted an activity period at midday to be utilized for school functions other than formal classroom instruction.

The Association stated that its reason for submitting the grievance to Step 3 of the agreement's grievance procedure was "specific violations of School Code 24—9 by Unit 4, and deprivation of equal protection under the law of individual teachers and groups of teachers as guaranteed by section III A(1) of the contract." The Association based its reasoning upon the following provisions of the agreement entered into by the parties:

> "SECTION II A—A grievance shall mean a claim that there has been an alleged violation, misinterpretation, or misapplication of any provision of this Agreement.
>
> SECTION IV I—All teachers shall have a duty-free uninterrupted lunch period of not less than thirty minutes.
>
> SECTION III A (1)—Nothing herein shall deny or restrict to any teacher rights he may have under the Illinois General School Laws, or other applicable laws and regulations."

Then, referring to section 24—9 of the *Illinois School Code* (Ill. Rev. Stat. 1971, ch. 122, sec. 24—9):

> "Every teacher in any school house where 2 or more teachers are employed whose duties require attendance at the school for 4 or more clock hours in any school day shall be entitled to and be allowed a duty free lunch period equal to the regular local school lunch period but not less than 30 minutes in each school day."

The Association asked for immediate compliance with section 24—9 of the School Code and requested that all teachers who had been required to work in alleged violation of that provision be paid for such time. The Board of Education replied that the lunch period under the revised schedule remained at 30 minutes and that it was not lengthened by the activity period, and that all teachers therefore enjoyed a 30-minute lunch break as provided by the agreement.

The Association then filed a request with the American Arbitration Association for the controversy to be submitted to arbitration as provided in section II of the agreement with the Board of Education. The Association apparently proceeded on the theory that arbitration was warranted since the agreement referred to the statute and thereby incorporated any additional rights granted there. Step 4 of the agreement's grievance procedure contains the arbitration clause and states that:

> "The arbitrator shall make his decision strictly on the terms of the agreement and shall make no decision contrary to, or in conflict with, the agreement nor in violation with existing laws."

The Board of Education and the Association appeared before the arbitrator on June 25, 1972, at which time the Board of Education filed a motion to dismiss the claim for want of jurisdiction or in the alternative, for want of an arbitrable issue in that the grievance was based solely on an alleged violation of the School Code and not on a violation of the agreement for and under which arbitration is provided.

The arbitrator heard the objection to the arbitrability of the matter and then heard the evidence and oral arguments on the grievance. On July 17, 1972, the arbitrator filed his opinion which in essence accepted the argument of the Association: referring to the agreement's provision that nothing in it was to deny or restrict any rights given teachers by the Illinois School Laws, noting the terms of section 24—9 of the School Code, and then referred to the definition of "grievance" contained in section II-A of the contract. Accordingly, the arbitrator found that the matter was properly subject to arbitration. He then found that section III A(1) of the agreement had been violated since certain rights granted to the teachers under the School Code had been denied or restricted. This

finding was bottomed upon the proposition that the Board had construed section IV I to give the teachers only a 30-minute lunch period, that the lunch period for the students, under the new schedule, was in fact 1 hour in duration, and therefore under sec. 24—9 of the School Code the teachers were entitled to a lunch period of equal duration. An award was made finding that the grievance was sustained and ordering the Board of Education to compensate the aggrieved teachers on an hourly rate based on 1/900th of their annual salary.

The Board of Education filed a petition to set aside and vacate the arbitration award. Both parties appeared by counsel before the trial court, agreed that the facts were not in dispute, and presented arguments on the petition. On November 30, 1972, the trial court entered an order setting aside and declaring the award of the arbitrator void, along with a memorandum responding to each of the issues presented by the parties. The basis of the court's decision was that the arbitrator had exceeded his power in making the award. The court recognized that deference is to be given to arbitration awards, especially in the area of labor relations, but found here the arbitration agreement was framed in restrictive rather than broad language, and that the School Code provision on lunch periods did not conflict with the agreement and was completely independent of the agreement, so therefore outside the power of the arbitrator.

The Association contends that rather than the terms of the present Illinois Uniform Arbitration Act or the common law standards, the statutory grounds for vacating arbitrators' awards in existence prior to the adoption of the Uniform Act are controlling.

The enactment of the Uniform Arbitration Act, with certain modifications, in 1961, repealed sections 1—18 of chapter 10, the former Illinois Act entitled "An Act to revise the law in relation to arbitration and awards" first enacted in 1917. (Ill. Rev. Stat. 1971, ch. 10, sec. 123.) The present Uniform Arbitration Act specifically provides that upon application of a party the court shall vacate an award where the arbitration exceeded their powers. (Ill. Rev. Stat. 1971, ch. 10, sec. 112(a) (3).) However, it is (e) of that section which the Association relies upon as a limiting the grounds to those which existed prior to the Uniform Act. Subsection (e) of the Illinois Act has no counterpart in the Uniform Act and provides:

"Nothing in this section or any other section of this act shall apply to the vacating, modifying, or correcting of any award entered as a result of an arbitration agreement which is a part of or pursuant to a collective bargaining agreement; and the grounds for vacating, modifying, or correcting such an award shall be

those which existed prior to the enactment of this Act." (Ill. Rev. Stat. 1971, ch. 10, sec. 112(e).)

The Association reads this language to mean that the grounds for setting aside an award provided by the preceding statutory provisions should control, while the Board of Education, with whom the trial court agreed, asserts that the common law grounds apply. Section 11 of the old Act listed specific grounds as "fraud, corruption, or other undue means" as grounds for vacating an award along with a showing that the arbitrator had "misbehaved". (Ill. Rev. Stat. 1959, ch. 10, sec. 11.) Section 11 of the prior act also stated that an award might be vacated for "legal defects" which case law indicates would include instances where arbitrators exceeded their powers and where the issues should not have been determined by arbitration. (*Podolsky v. Raskin* (1920), 294 Ill. 443, 128 N.E. 534.) Clearly, at common law a showing that the arbitrator exceeded his authority was among the grounds warranting a reviewing court setting aside an arbitration award. *Country Mutual Insurance Co. v. National Bank of Decatur* (1969), 109 Ill.App.2d 133, 248 N.E.2d 299.

We find the Association's reliance upon the grounds for vacating arbitration awards contained in the 1917 Act, which was explicitly repealed by the enaction of the Uniform Arbitration Act in 1961, without merit. Not only was that Act repealed, none of its terms were expressly re-enacted or extended and even if they were, its general language of "legal defects" would clearly seem to permit vacating awards entered by an arbitrator acting without authority as is the case under both common law and the Uniform Arbitration Act. Where an arbitrator exceeds the power granted to him by the agreement between the parties, his decision is void and unenforcible to the extent such powers were exceeded. *Nuest v. Westinghouse Air Brake Co.* (S.D. Ill. 1970), 373 F. Supp. 1228.

It is the agreement between the parties submitting the matter in controversy for arbitration which fixes the conditions, limitations, and restrictions to be observed by the arbitrator in making his award: "Despite the salutory purpose of our Arbitration Act, parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." (*Flood v. Country Mutual Insurance Co.*, 41 Ill.2d 91, 94, 242 N.E.2d 149.) The agreement involved in the instant case provided in section II C (3) (Step 4(b) (4): "The arbitrator shall make his decision strictly on the terms of the agreement * * *" not in contravention of existing laws, and "* * * shall have no power to add to, or subtract from, the terms and conditions of this agreement."

After reciting the general rule of *Flood v. Country Mutual Insurance*

*Co.* to be that the contract of the parties and not the Arbitration Act determines what is to be arbitrated, the court in *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.,* 109 Ill.App.2d 224, 248 N.E.2d 289, held that the matter of an equitable adjustment of the contract price to reflect additional cost due to changes and delays perpetrated by the owner, was not arbitrable even where the parties had contracted to arbitrate "all disputes arising in connection with this contract" which is as expansive as the arbitration provision in the instant case is restrictive.

The Association urges that the agreement's provision that nothing in it should be to the detriment of any rights given teachers by statute incorporates the School Code's mandate that teachers should have a lunch period equal to the students, and that the agreement's express provision that all teachers have a duty free uninterrupted lunch period of at least 30 minutes be read in conjunction with the same minimum in the statute to simply establish a floor. The express contract provision is that the teachers shall have a duty free lunch period of not less than 30 minutes. Had their contention been that they were receiving a lunch period of *less* than 30 minutes the issue clearly would have been arbitrable, since it would have constituted a claim that the contract provision was being violated and thus a "grievance" within the provisions of section II A.

■■ As we have noted section III A(1) provides that "Nothing *herein* shall deny or restrict" any teachers' rights granted to him under the Illinois General School Laws. The terms of the contract relating to the lunch period are *not* in conflict with, nor do they constitute a denial of, any rights granted to teachers under sec. 24—9 of the School Code. To put it another way "Nothing herein" offends the Code. The award in question is predicated, despite the language used, and the reasoning employed by the arbitrator in reaching the result, *not* upon a violation of any contract provision but rather upon an alleged violation of sec. 24—9 of the School Code. This does not constitute a "grievance" within the meaning of section II A of the agreement, and therefore the issue was not arbitrable.

■■ The Association contends that the Board of Education's participation in arbitration and waiting until after the arbitrator's award was rendered to file a petition to vacate resulted in a waiver of its right to challenge the award. The Board of Education from the beginning took the position that the matter was not subject to arbitration, at the time it denied the grievance and by a motion to dismiss before the beginning of the arbitration hearing. The arbitrator chose to postpone his decision on the arbitrability of the matter until announcing his award. Although some cases have found that there is a waiver of the right to contest arbi-

trability after having participated in a hearing on the merits of a dispute, the preferable rule seems to be as the trial court found citing *American Bakery & Confectionery Workers v. National Biscuit Co.* (3rd Cir. 1967), 378 F.2d 918, that a timely objection to arbitrability preserves the right to challenge the award after participating in the arbitration proceedings. That case noted that if participation invariably precluded a party from later challenging arbitrability, it would be adverse to the policy favoring arbitration in labor matters since such parties would either seek injunctions against arbitration at the outset or refrain from participating. The Association argues that the Board of Education could have used the procedures provided by section 102(b) Ill. Rev. Stat. 1971, ch. 10, sec. 102(b) of the Uniform Arbitration Act to determine the question of arbitrability before arbitration and chose not to, but rather participated in the proceedings and waited until after the award to see whether it was favorable or unfavorable before seeking judicial determination of arbitrability and thus had a "second bite at the apple". However, section 102 is not made the exclusive means to question the arbitrability of a matter; as mentioned before, the Board of Education maintained its objection to the arbitrability throughout the proceedings; and the arbitrator did not make a decision on arbitrability in advance of his award, but rather incorporated it in the award. So there was no time during which the Board of Education knew that the arbitrator had determined the matter was arbitrable while, at the same time, waiting to see whether the award was favorable or unfavorable. "Where there is an agreement to arbitrate and its scope is reasonably in doubt, the issue of arbitrability should be initially determined by the arbitrators, subject to the protective reservations of section 12 of the Act—under which the court may vacate an award under the varying conditions therein specified." *School District No. 46 v. Del Bianco*, 68 Ill.App.2d 145, 155, 215 N.E.2d 25.

We agree with the trial court that the arbitrator exceeded his authority in making an award in a proceeding which did not involve any violation of the express provisions of the agreement.

Judgment affirmed.

CRAVEN, P. J., and SMITH, J., concur.