290

THE COUNTY OF WILL, Plaintiff-Appellee, *v.* LOCAL 1028, WILL COUNTY EMPLOYEES UNION, AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES, AFL-CIO, Defendant-Appellant.

Third District      No. 78-413

Opinion filed November 27, 1979.—Rehearing denied January 15, 1980.

Barbara J. Hillman and Gilbert Feldman, both of Cornfield and Feldman, of Chicago, for appellants.

Edward Petka, State's Attorney, of Joliet (Robert W. Mueller, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Local 1028 Will County Employees Union, American Federation of State, County, and Municipal Employees, AFL-CIO (hereinafter Union) appeals from the judgment of the Circuit Court of Will County, granting summary judgment to plaintiff County of Will (hereinafter County), in the County's suit to vacate an arbitration award entered in favor of the Union by a board of arbitration. The circuit court granted summary judgment to the County on its petition to vacate the award and on the Union's two counterclaims, both seeking enforcement of the award. On this appeal, the Union challenges the circuit court's action in entering summary judgment and thereby vacating the award. A more specific discussion of the issues raised by the Union must await a recitation of the factual background of the case. To that we now proceed.

On December 1, 1973, the Union and the County entered into a collective bargaining agreement which by express terms governed through November 30, 1974. That '73-'74 agreement set forth compensation schedules and other related matters regarding employee work conditions. It also contained, in article VII, an agreement between

the parties for a grievance procedure to resolve disputes under the contract. The final step of the procedure was a hearing before a board of arbitration. In the agreement, both sides agreed to abide by a decision of the board of arbitration, "to the extent permitted by law." Article I of the agreement contained the following pertinent clauses:

"Section 3. The benefit of any and all decisions and conclusions the Board [the County Board] may reach after negotiating with the Union shall apply equally to all employees.

Section 4. Should negotiations fail to resolve differences between the Board and the Union, the decision of the Board shall be final.

Section 5. The Union recognizes that the Board has the power and responsibility under the Laws of the State of Illinois for directing the operations of the County and that the Board reserves such power and responsibility to itself, limited only by the specific and express terms of the Agreement to the extent such terms are permitted by law."

The above-quoted language of section 5 echoes language in the preamble to the agreement which states: "The Union recognizes, however, that this Agreement shall in no way restrict the right of any governmental body or elected public official to carry out its or his duties and obligations as required by law." Another pertinent provision of the contract on this appeal is article XI, which provided that the '73-'74 agreement should "automatically be renewed from year to year thereafter" unless terminated in writing by either side within a specified time period. Having set forth the pertinent provisions of the '73-'74 agreement, we turn then to the year in dispute on this appeal, 1974-1975.

Prior to the end of the '73-'74 contract year, the Union and the County began negotiations for a new contract to cover '74-'75. The negotiating teams for both sides met and had apparently reached an agreement on a new contract. One provision of the new contract was to grant to county employees an across-the-board 10% salary increase, to a maximum of $1,050. While the negotiating team for the County apparently agreed to that provision, the full county board never did. On November 29, 1974, the county board adopted a resolution which, in pertinent part, recited (1) that a renewal of the contract was due, (2) that the proposed agreement had certain changes, including a provision that "[a]ll salaries will reflect the 10% increase, to a maximum of $1,050 for all County Employees with over six months service," and (3) that the finance committee recommends that the County enter into a working agreement with the Union. The resolution closed with the following language: "that the County of Will enter into the proposed Union Agreement for the ensuing fiscal year, December 1, 1974 through November 30, 1975, and

that the County Board Chairman be authorized and directed to execute said Agreement."

Despite the resolution authorizing and directing the board chairman to execute the union agreement specified, the agreement between the County and the Union, to cover '74-'75, was never executed. The Union refused to sign the agreement set forth by the County because it contained the unagreed-to addendum with respect to the requirement of six months service with the County in order for employees to receive the 10% salary increase. That particular addendum with respect to salary increases was contrary to the agreement reached during negotiations between negotiating teams, although it appears to have been consistent with previous board policy. At any rate, the parties could not agree to a salary increase provision and no collective bargaining agreement, for fiscal '74-'75, was ever executed by the parties.

In December 1974, the county board, as required by statute (Ill. Rev. Stat. 1973, ch. 34, pars. 2101 through 2107), adopted a budget for the fiscal year 1974-1975. That budget contained salary increases of various sizes, depending upon job classification and length of service with the County in a particular job category. As a result of adoption of the budget, persons who had been with the County for over six months, in the same position, received a full 10% pay increase. Persons who had not been with the County for six months, in any capacity, were given no pay increase. Some persons who had been with the County for more than six months, but were newly promoted to a new position, received a 5% pay increase. In addition, the effect given to the budget by the County was to freeze those salary schedules for the entire year as to a particular job. For example, when a person, who had not received any increase in December, was promoted to a vacant position, which had previously been filled by someone who had received the pay raise, then the newly promoted person would continue to receive the same pay as the previous employee in the job. The increases were initially based upon an individual's length of time with the County in a particular job, but once into the fiscal year, the increases were frozen with the particular job and not with the individual. There is no question that the salary schedule which was contained in the budget for '74-'75 did not reflect the 10% across-the-board wage increase agreed to by the negotiating teams for the County and the Union. Neither did the actual increases reflect the literal meaning of the language used by the Board in their November 29, 1974, resolution, which language recited an agreement as to a 10% increase "for all County Employees with over six months service."

Thereafter, the Union filed a grievance in which they contended that the County failed to provide all employees with the full 10% increase, with

a maximum of $1,050, as had been agreed to by the parties' negotiating committees. The Union protested that the salary schedule adopted by the County, with its varying percentage increases tied throughout the year to a particular job category, resulted in inconsistent and unequal treatment of county employees. The Union and the Board were unable to resolve their differences with respect to the grievance. Therefore, pursuant to the terms of the '73-'74 agreement, which not having been terminated, remained in effect, the dispute was taken before a board of arbitration for final resolution and decision. The board of arbitration took testimony, heard arguments of counsel and examined written briefs.

On May 23, 1977, the board of arbitration issued its opinion and decision. The board of arbitration found that the County was not bound by the terms of the wage increase agreed to by its negotiating team, since the negotiators had not been empowered to reach final and binding agreement with the Union. The board held that the County had final decision making power and that it had retained the authority to modify any proposed wage agreement, including the authority to specify the type and nature of salary increases for 1974-1975. The board also found that there was no violation of the '73-'74 contract when wage increases were withheld from employees with less than six months' service with the County on December 1, 1974. However, the board of arbitration did find a violation of the '73-'74 agreement, which had continued in force, in the manner in which salary increases were made to certain employees in the '74-'75 fiscal year. It found a violation of section 3 of article 1 of the '73-'74 agreement, which provided:

> "The benefit of any and all decisions and conclusions the Board may reach after negotiating with the Union shall apply equally to all employees."

The finding of a violation of this provision was based upon another board of arbitration finding, namely that the November 29, 1974, resolution of the county board governed the wage increase pattern that was granted to county employees for '74-'75. Having concluded that the resolution was the county board's governing decision with respect to salaries for '74-'75, the arbitration board concluded that such decision, which had come about after negotiations with the Union, was required to be applied equally to all county employees, by the above-quoted provision in the '73-'74 agreement. Accordingly, the arbitration board "awarded" all county employees with more than six months' service on December 1, 1974, a full 10% salary increase, with a maximum of $1,050, with retroactive application. The arbitrators, in essence, enforced the language contained within the resolution, with respect to salary increases, through the equal treatment clause of the previous year's agreement.

The County thereafter filed an action in the circuit court, seeking to

vacate the award of the board of arbitration. The Union in that action filed two counterclaims seeking enforcement of the arbitration award. Summary judgment motions were eventually filed by both sides. The circuit court heard arguments and issued its order, granting summary judgment to the County on its petition to vacate the award and on the Union's counterclaims for enforcement of the award. The circuit court, in a lengthy opinion accompanying its order, set forth the bases for its decision. The court found that the county board's resolution of November 29, 1974, was nothing more than an authorization to the board chairman to execute the proposed '74-'75 agreement. That contract was never executed by either side. The court also found that the power to fix salaries was vested in the county board and that such power could not be delegated to an arbitrator via a collective bargaining agreement. The trial court then concluded that the award of the board of arbitration, in granting salary increases as set forth in their award, was an act of setting salaries, which action was the sole, nondelegable responsibility of the county board. Therefore, the court held that the board of arbitration had exceeded its powers and that its award was null and void. The Union appeals.

The Union raises three issues with respect to the findings and decision of the circuit court in this matter.

(1) Whether the Resolution adopted on November 29, 1974, by the Will County Board, set the wages of the County employees represented by the defendant Union?

(2) Whether, under a binding arbitration clause in a collective bargaining agreement between the County of Will and the defendant Union, an arbitrator can interpret and apply a clause providing that County Board decisions shall apply equally to all employees, in response to a grievance alleging inequality with respect to wage increases received by the employees?

(3) Whether, and to what extent, the contract interpretation of an arbitrator, within the scope of his authority, is reviewable by the courts?

It will be helpful, at the outset, to broadly sketch the Union's arguments. The Union conceded, in its brief and during oral argument, that the county board has the nondelegable duty and authority to fix salaries for county employees. It argues, however, that once the County has discharged this statutory, nondelegable duty, by making a decision with regard to salaries, then that decision may be incorporated into, or enforced through, a collective bargaining agreement. Once that decision has been made, according to the Union, an arbitrator may enforce it without there being any improper delegation of the County's duties or any usurpation of the County's decision making authority. In its

arguments to this court, the Union does not argue that the salary-increase decision was made and then directly incorporated into a collective bargaining agreement for 1974-1975. Both the board of arbitration and the circuit court found that there was no binding collective bargaining agreement ever entered into between the Union and the County for 1974-1975. The Union does not contest that finding before us. What the Union does argue is that the county board did.make a decision on employees' salaries for '74-'75. That decision, according to the Union, was embodied in the November 29, 1974, resolution. Having made a decision, to-wit, to pay employees with over six months' service a 10% salary increase, to a maximum of $1,050, the board, so goes the Union argument, had discharged its statutory duty and had exercised its statutory authority with regard to salaries. The Union then argues that this decision was reached "after negotiations with the Union" within the meaning of section 3 of article 1 of the 1973-1974 agreement. Section 3 states that all decisions and conclusions the board may reach after negotiations with the Union shall apply equally to all county employees. The Union's position is that the board made its decision as to salary increases after negotiating with the Union and that by the terms of the '73-'74 agreement, it was bound to apply that decision equally to all employees. It did not do so when it paid salaries out to employees during 1974-1975 in the manner already set forth in the statement of facts. To summarize, as to the central issue of the board of arbitration's power to make the salary decision it made, the Union argues that the final decision was made by the county board in the November resolution and that the board of arbitration only enforced applicable provisions of the '73-'74 contract to that decision when it made its award.

■■ Before discussing the problems we have with that argument, it is useful to set forth those areas wherein we agree with the Union. As is conceded, and as the circuit court found, it is only the county board which can set the wages for County employees. (Ill. Rev. Stat. 1973, ch. 34, pars. 2101 through 2107.) Those statutory provisions place in the county board's hands budgetary decisions which encompass the decision as to county employee salaries. While those statutory provisions are not as specific and clear with respect to the county board's authority and duty to set salaries as are the provisions with respect to a school board's authority and duty to set teacher salaries (compare Ill. Rev. Stat. 1977, ch. 34, pars. 2101 through 2107 with Ill. Rev. Stat. 1977, ch. 122, par. 10—20.7), we find the same reasoning and result as in the school cases to obtain herein. That is, the fixing of County employees' salaries is the sole, nondelegable duty of the county board, which derives its authority and duty from the legislative mandate that the County adopt a budget. (*People ex rel. Price*

*v. Illinois Central R.R. Co.* (1915), 266 Ill. 636; see *Board of Trustees v. Cook County College Teachers Union* (1976), 62 Ill. 2d 470, 343 N.E.2d 473; *Elder v. Board of Education* (1965), 60 Ill. App. 2d 56, 208 N.E.2d 423.) As the board's sole duty and responsibility, it may not delegate such duty and responsibility to another. If it were to do so, it would be an illegal delegation and without effect. (*Lindblad v. Board of Education* (1906), 221 Ill. 261, 77 N.E. 450; *Board of Trustees v. Cook County College Teachers Union; Elder v. Board of Education.*) Also, if an arbitrator would act to assume that authority and responsibility, such action would be null and void as an act in excess of his authority. (*Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 304 N.E.2d 138.) We perceive no disagreement between the parties as to the correctness of these statements of law.

■ This court is also in agreement with the Union's contention that a school board, or a county board, can incorporate into a collective bargaining agreement a salary schedule which *it* has set and adopted, even when the specifics of those salaries have been worked out with the Union prior to entering into an agreement. In such case, when a precise and definite salary schedule has been set forth and agreed to by the board, then it is the board's decision. When, in the course of a grievance procedure as to salaries, an arbitrator comes in to interpret the contract, including the agreed-to salary provisions, he cannot be said to be setting the salaries and thus assuming authority he does not have. What an arbitrator, in that position, is doing is enforcing the decision already reached by the board. Under those circumstances, there is no improper delegation or assumption of authority by the arbitrator. (See *Libertyville Education Association v. Board of Education* (1977), 56 Ill. App. 3d 503, 371 N.E.2d 676; *cf. Board of Trustees v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 420, 386 N.E.2d 47; *Board of Trustees v. Cook County College Teachers Union.*) Of course, decisions in individual cases will turn on the structure and specific language of the collective bargaining agreement involved. In the present case, it is conceded that no such salary schedule for '74-'75 was ever incorporated into a final, binding collective bargaining agreement covering 1974-1975. However, the Union's position is that the November 29, 1974, county board resolution was the County's final decision as to salary increases for 1974-1975 and that the board of arbitration merely enforced that decision through applicable provisions of the 1973-1974 contract, specifically the equal-treatment clause therein.

■ Turning now to the difficulties we have with the Union's argument and the board of arbitration's decision, the central problem is the Union's interpretation of the November 1974 county resolution. The Union in its

brief concedes that it is the function of the courts to interpret the resolution, citing *Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 304 N.E.2d 138.

The November 29, 1974, resolution by the county board dealt with proposed changes in the existing collective bargaining agreement and stated the county board's resolve to enter into the proposed agreement with the specified changes. The proposed agreement to which the Resolution was directed and to which it referred was never executed by the two parties. No 1974-1975 binding collective bargaining agreement was ever entered into between the County and the Union. The negotiating teams, which had reached agreement on such a contract, did not have authority to enter into a contract and did not purport to enter into such a contract. It is apparent, from the record, that at least one, if not the primary, area of disagreement between the Union and the county board was the issue of salary increases for 1974-1975. The board, according to its November resolution, was willing to agree to a 10% salary increase, to a maximum of $1,050, for county employees with over six months' service. The Union would not accept such provision, but it took the position that the county board had already agreed to an across-the-board 10% pay increase without length of service qualification. No agreement as to any salary increases was ever reached between the parties, so far as fiscal 1975 was concerned. In the absence of such final agreement, the only binding agreement concerning 1974-1975 was the previous year's agreement which continued in effect, not having been terminated by either side. So far as we can determine, in such circumstances, the county board could have continued to pay only the salaries set forth and agreed to in that contract, the '73-'74 contract. The County did not, however, continue to pay the salaries as specified in the '73-'74 agreement. Rather, the county board increased some of the salaries of the county work force. To employees with six months' service in a particular job it gave a 10% increase, to others with less than six months' service in their job it gave a 5% increase, and to others it gave no increase at all. In addition, those salaries as set by the county board remained tied to the particular employment position through the year, as before discussed.

There is no apparent dispute as to the amounts of salary increase given to each employment position during fiscal 1975. The real crux of the dispute and of the issue before us is the manner by which those increases for 1974-1975 were effected. The Union argues that the November resolution was the final decision of the county board on salary increases for 1974-1975 and that it provided for a 10% increase, to a maximum of $1,050, for those with more than six months' service, without regard to whether they had held their current position for six months. It is the Union's position that the county board did not live up to its decision, as

stated in the November resolution, and that this decision was properly enforced by the board of arbitration through the 1973-1974 agreement. The county board responds that the November resolution was only an authorization by the county board to the county chairman to enter into an agreement and that the agreement was never executed. Alternately, it argues that any further interpretation of the language of the resolution was for the county board to make and that it did so in construing "six months" to mean six months in a particular job.

■ The board of arbitration found that the November resolution governed the salary increases for 1974-1975 and the Union asserts that the resolution was the "only act of the County Board related to the setting of wages for the 1975 fiscal year." The finding by the board of arbitration and the assertion by the Union are not accurate. The November 29, 1974, resolution did not by its terms set salaries or adopt any specific pay increases for fiscal 1975. The resolution stated the county board's resolve to enter into a proposed collective bargaining agreement with the Union for 1974-1975, and it directed the board chairman to execute such an agreement. The subject of the resolution is stated at its top: "Re: Adoption of Union Contract for 1975." It does not state: "Re: Adoption of Salary Increases for 1975." The language in the resolving clause relates only to adoption of a proposed contract. The language with respect to the 10% salary increase is not found in the closing clause of the resolution, but it is contained within a "Whereas" clause relating to and reciting proposed changes in the then existing agreement. The resolution, relied so heavily upon by the board of arbitration and the Union, merely recites a proposed change in a proposed union agreement with respect to salary increases. It does not unilaterally and conclusively adopt that proposed change with respect to salary increases for '74-'75. It states the county board's willingness to agree to that salary provision and to enter into a contract. As has been repeatedly noted, the agreement to which the resolution referred was never executed by the parties. Our examination of the resolution leads us to conclude that the circuit court was correct in finding that the resolution did no more than state the county board's resolve to enter into a proposed agreement and to authorize execution thereof by its chairman. It did not state the County's resolve to pay salary increases regardless of whether an agreement was executed, and it did not bind the County to the salary increases, recited as part of a proposed agreement, when that agreement was never executed.

Both the board of arbitration and the Union, in seeing the November resolution as the governing and only act of the County in setting '74-'75 salaries, overlook that the county board's final act in setting salaries for '74-'75 was its adoption of the county budget for fiscal 1975, done in December 1974. It was adoption of that budget, and not adoption

of the November resolution, which finally set the figures as to wage increases and which tied them to service qualifications dependent upon the length of time in a particular job. It was the budget which set the wages for the year and which formed the basis upon which salaries were paid out during the year. While the budget for 1974-1975 is not in the record before us, the uncontradicted testimony of the county board chairman is in the record. In hearings before the board of arbitration, Ted Grabavoy testified that salaries, by employment position or "line item," were set forth in the 1974-1975 county budget, which was passed by the county board in December 1974. Grabavoy also testified that the salary figures set by the county board in the budget were not those agreed to by the Union and the County during negotiations. In fact, they were contrary to the initial agreement with the Union. It was on the basis of the budget, as finally adopted, and not upon the initial agreement between negotiating teams or the November resolution, that salaries for 1974-1975 were paid to county employees. The result, which follows from recognition that the county board's final decision as to salaries was embodied in the budget for 1974-1975, and not in the November resolution, is that the foundation upon which the board of arbitration set its award is gone. The board of arbitration's award was based upon application of the equal treatment clause of the '73-'74 agreement to the decision of the county board as to salaries for '74-'75, which decision according to the arbitration board's findings, was the November resolution. That erroneous finding was essential to the award in this case, and without it, the award cannot be supported.

■■■ We have determined that the county board had the nondelegable power and duty to set salaries for county employees. (Ill. Rev. Stat. 1973, ch. 34, pars. 2101 through 2107.) We have found that the final decision of the county board with respect to salaries for 1974-1975 was embodied in the County's budget for 1974-1975. Those salary figures were not based upon an agreement with the Union, and such salaries were never included in a binding agreement with the Union. What the board of arbitration did, then, through its award, was to change the salary decisions made by the county board and to substitute its own decisions thereon, based upon an erroneous conclusion as to the effect and intent of the November resolution by the County. When it did so, the board of arbitration usurped the County's nondelegable duty and power to set salaries and it thereby exceeded its authority. Its award is improper and was properly set aside by the trial court. (*Board of Education v. Champaign Education Association* (1973), 15 Ill. App. 3d 335, 304 N.E.2d 138.) Nothing in the '73-'74 agreement, which remained in effect, gave the board of arbitration the power it assumed by its award; and even had such provision been included, it would have been unenforceable. (See *Board of Trustees v.*

*Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 420, 386 N.E.2d 47, and cases cited therein.) In conclusion, we agree with the trial court that the award by the board of arbitration was based upon an erroneous interpretation of the effect to be given to the November resolution and that any enforcement of that award would, in effect, place the board of arbitration in a position as final decision maker on the question of county employee salaries, a position which by law is solely that of the county board. The award, in changing the salary decision of the County and in establishing a different salary decision, unsupported in the record, exceeded the authority of the board of arbitration.

The Union strongly asserts the dispositive application of the recently decided *Teachers Union* case to the facts and issues presented on this appeal. (*Board of Trustees v. Cook County College Teachers Union* (1979), 74 Ill. 2d 412, 386 N.E.2d 47.) In that case, Justice Moran stated that the scope of an arbitrator's power is usually dependent upon the parties' contractual provisions with respect thereto and that courts have only a limited scope of review over his interpretation of the contract. However, Justice Moran also made it clear that the limited standard of review is applicable only when the arbitrator is acting within his authority.

> "Even if a dispute between the parties involves the application and interpretation of provisions of the collective bargaining agreement, it is not arbitrable if it would constitute an impermissible delegation of discretionary public responsibility specifically reposed by law in [a public body]. [Citations.]" (74 Ill. 2d 412, 420.)

The *Teachers Union* case did not involve such a situation where the arbitrator was assuming an authority specifically vested by law in a public body, there the school board. (74 Ill. 2d 412, 420.) The present case, as heretofore established, does involve the assumption of the county board's authority and duty to set salaries by the board of arbitration.

■ As to the Union's emphasis upon section 3 of article I of the '73-'74 contract, the equal-treatment clause therein, we find their argument to be unconvincing. Even ignoring the pertinent language of section 4, section 3 cannot be used in the manner suggested by the Union and the board of arbitration once the adoption of the budget is seen as the final decision of the county board on salaries. Assuming its applicability, section 3 would require that such decision operate equally on all employees. That cannot be construed to mean that all employees must receive an equal increase, since the salary decision itself provided for unequal treatment, based upon length of time at a particular job. Thus, section 3 has little rational application when the adoption of the budget is seen as embodying the final salary decisions of the county board. The Union's entire section 3

argument is premised upon the November resolution being the final decision of the county board, and when that premise is removed, there is no sound basis for the contention of the Union. We also note that, as the circuit court held, section 3 must be read in conjunction with section 4, which provides that "should negotiations fail to resolve differences between the Board and the Union, the decision of the Board shall be final." Given the facts and circumstances in the instant case, section 4 must govern. This is so because the final decision of the county board with respect to salaries did not come about as a result of negotiations or agreement with the Union, but rather it came about after negotiations could not resolve the differences as to salary increases. It is apparent that the county board and the Union had irreconcilable differences concerning that matter. Negotiations failed to resolve those differences. Under such circumstances, section 4 mandates that the decision of the county board is final.

We would also comment, in closing, that were a reasonable interpretation, consistent with the law, available to support the board of arbitration's decision, we would not hesitate to affirm its action. However, we are unable to do so here, for the reason that the final decision was the county board's, by statute, and not the board of arbitration's. Even had the county board delegated that decision, via a contract, to an arbitrator, such contract provision would be unenforceable.

For the reasons outlined in this opinion, we conclude that the Circuit Court of Will County acted properly in vacating the arbitration award.

Accordingly, the decision of the Circuit Court of Will County is affirmed.

Affirmed.

STENGEL and SCOTT, JJ., concur.