INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1400, Appellant (Defendant Below),

v.

CITIZENS GAS & COKE UTILITY, Appellee (Plaintiff Below).

No. 2–581A177.

Court of Appeals of Indiana,
Second District.

Dec. 14, 1981.

Frederick W. Dennerline, III, Fillenwarth, Dennerline, Groth & McCracken, Indianapolis, for appellant.

Susan B. Tabler, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

The Marion Superior Court, Civil Division Room Number One, granted the motion by Citizens Gas & Coke Utility (Citizens Gas) to vacate an arbitration award in favor of Local 1400 of the International Brotherhood of Electrical Workers (IBEW) which concluded that part of a job description was unreasonable. The IBEW now appeals, asserting that the trial court's judgment was not within the narrow grounds for vacating arbitration awards permitted by the Uni-

form Arbitration Act (Uniform Act), IC 34–4–2–1 et seq.

We affirm.

## FACTS

This dispute arises from the hiring and promotion policies embodied in the Collective Bargaining Agreement between Citizens Gas and the IBEW for 1977–79. Article 13 of the agreement covering job bidding provides that the existence of certain job vacancies be posted at Utility work sites, and an opportunity provided current employees to apply for the jobs. If more than one qualified employee applies for the job, the most senior applicant in the most closely related current job is to receive the appointment.

Paragraph 13.2.5 deals with cases in which the senior applicant is not qualified for the position to be filled and no employee is deemed suitable for promotion by the company.[1] It provides the company may fill the position "by whatever means it deems appropriate;" if the job is one of those for which an "extended training program" was established, the company may fill the position with a trainee. The trainee must be the senior employee with a satisfactory work record who "meets the minimum qualifications . . . for the posted job." Agreement § 13.2.3.

The position of Machinery Repairman B was designated as having an extended trainee job appurtenant to it.

Article 12 of the agreement covers the writing of job descriptions.[2] Citizens Gas

---

1. 13.2.5 If there are no qualified bidders for a posted job, the Utility may fill a vacancy by normal lines of promotion based on job classification seniority. *If there are no qualified candidates the vacancy may be filled by whatever means it deems appropriate.* If the job posted has an extended trainee job, as listed in Exhibit "D", appurtenant to it, and if there are no qualified bidders for the posted job, *the Utility may fill the vacancy by the appointment to the trainee job of the employe deemed by the Utility to be the senior qualified employe for training taking into account the factors listed in 13.2.2 above.* If a junior employe is selected by the Utility for the extended trainee job, the senior employes who bid on the posted job and

were not chosen will be notified in writing of the reasons, such reasons to be stated in a clear and explicit fashion why they did not receive the trainee job. A copy of this notice will also be sent to the Union. (emphasis added)

2. Article 12 Job Evaluation
12.1 Policy .
12.1.1 It is agreed that the Job Evaluation Program is the proper means for establishing pay grades for all jobs in the bargaining unit.
12.2 New Jobs
12.2.1 If a new job is created, the Utility shall establish a rate of pay for such job following the methods and procedures as included in the Job Evaluation Program.

must publish the rates of pay and job descriptions of all positions covered by the agreement. If dissatisfied with a new or revised description, the IBEW may protest it within 30 days of issuance. The protest may lead to "step three" of the grievance procedure, which consists in referring the grievance for negotiation between committees representing the union and management. *Agreement* § 7.1.6, p. 16. If the committees do not reach agreement in twenty days, either party may refer the matter to arbitration under Section 7.2 of the agreement. Any decision by the arbitrator "shall be consistent with and limited to the terms of this Agreement." [3]

Finally, we reprint Article 2 of the agreement:

> 12.2.2 The Utility agrees to forward to the Union office a copy of the job description and the evaluated pay grade prior to posting the job under the job bidding procedure. If the new job is one that does not require posting, the Union office shall be provided with the job description and pay grade prior to the Utility's assigning an employe to the new job.
> 12.3 Reevaluation of Existing Jobs
> 12.3.1 Should either party hereto notify the other in writing that there has occurred a change in a then existing job classification sufficient to warrant a review, the Utility will, within thirty (30) days from the date of such notice, cause to have such job reviewed and if justified, reevaluated, with the Union being informed of the results of the review and/or reevaluation.
> 12.4 Union's Right to Challenge
> 12.4.1 In either 12.2 or 12.3 above, *the Union, upon receipt of the required information, will have thirty (30) days to file an objection to the job description and/or the pay grade established.*
> 12.4.2 Any differences arising between the Utility and the Union regarding job descriptions and/or pay grades, as referred to in 12.2 and 12.3 of this Article, may be handled through the grievance procedure beginning at step three. The Union agrees that any disagreement pertaining to an evaluated pay grade must be challenged on a specific factor or factors of the evaluation formula and not on the evaluated pay grade itself.
> 12.4.2. It is understood that the assigning of job titles is the responsibility of the Utility; however, the Utility agrees to inform the Union of any changes in the then existing titles and the reason therefor prior to making such change. (emphasis supplied)

# ARTICLE 2

# MANAGEMENT

2.1 It is understood and agreed between the parties that, except to the extent specifically limited herein, *the Utility has and shall continue to have* vested in it *the exclusive right to exercise the duties of management,* to plan, direct and control the working operations and force, *including the right to hire,* suspend, demote, promote, discharge for cause, determine the adequacy of supervision, relieve employes from their duties because of lack of work, or materials or for other legitimate reasons, and designate the hours of employment; provided, however, the above provisions shall be *subject to*

3. 7.2 Arbitration
    7.2.1 The Union's Business Manager and the appropriate Chief Shop Steward will discuss the grievance with the Utility's Vice President of Personnel and Industrial Relations or his designated representative or representatives. The parties shall attempt to come to an agreement concerning the matter in dispute. If no agreement is reached, the matter may be referred to arbitration upon the filing by the Union of a request to arbitrate with the American Arbitration Association. (If no such request is made by the Union within fifteen (15) working days after receiving management's decision (in writing) the grievance shall be considered abandoned and the matter deemed closed.)
    If the Union has timely filed a request to arbitrate with the American Arbitration Association, the Union Business Manager and the Utility's Vice President of Personnel and Industrial Relations, or their designated representatives, shall select an arbitrator from lists furnished to the parties under the procedure set forth in the Voluntary Labor Arbitration Rules of the American Arbitration Association. After the selection of the arbitrator is made under said rules, the arbitration shall be conducted under the Voluntary Labor Arbitration Rules of the American Arbitration Association.
    7.2.2. Any matter to be considered by the arbitrator, and *any decision of the arbitrator, shall be consistent with and limited to the terms of* this agreement. The arbitrator's decision shall be final and binding on all parties to the fullest extent permitted by law.
    7.2.3 It is further understood and agreed that the function of the arbitrator shall be limited to the hearing of one (1) grievance at a time unless otherwise mutually agreed to by the parties. (emphasis added)

*the conditions contained in this Agreement.* It is agreed that the enumeration of the above management prerogatives shall not be deemed to exclude other prerogatives not enumerated. Nothing in this Article is intended to impair or infringe upon the rights or privileges presently enjoyed by employes in the bargaining unit.

(Emphasis added).

Citizens Gas posted an opening for the position of Machinery Repairman B on September 19, 1978. It had established the qualifications for this position in 1975, without any objection from the IBEW. These qualifications included experience and aptitude in general repair work, the use of oxyacetylene torch and arc welding equipment, a familiarity with the equipment, tools, procedures, and documents to be used on the job, and "graduation from high school or applicable equivalent in either job training or study, preferably supplemented by courses in practical mechanics and mechanical maintenance."

None of the bidders for the Machinery Repairman B position were qualified. Citizens Gas therefore reposted the job as Machinery Repairman B Trainee under paragraph 13.2.5 of the agreement. The trainee position was awarded to Danny Pemberton, the least senior of four applicants. The most senior of the applicants, Albert Mullens, was passed over for the position because he lacked a high school diploma or the equivalent.

Mullens filed a grievance on November 4, 1978. After in-house procedures had reached an impasse, the IBEW demanded arbitration on March 6, 1979. The union stated the issue thus: "[W]hether or not the Company complied with the Collective Bargaining Agreement when they denied a vacant job to the senior applicant who met the required standards as consistently applied." Citizens Gas did not join in this submission.

The arbitrator, Samuel Edes, heard the matter on September 20, 1979; he made his award on February 7, 1980. The award itself provided:

1. The Utility unreasonably determined that the grievant, Albert Mullens, was unqualified for the position of Machinery Repairman "B" Trainee. The failure to offer the job to Mullens under the circumstances presented violated his contract rights.

2. Mullens shall be placed in the Trainee job and be made whole for losses, if any, suffered as a result of being bypassed for the job.

The arbitrator noted that in filling the Machinery Repairman B position, Citizens Gas had shown itself willing to waive the requirement of a high school diploma if the applicant proved himself to be qualified otherwise; and that the reason Citizens Gas does not waive the education requirement for the trainee position is that trainees are, by definition, not otherwise qualified for the repairman job.

The arbitrator thus recognized that a high school education was set out as a qualification for the position of Machinery Repairman B Trainee. He went on to say, "in establishing job requirements the Utility undoubtedly has wide discretion. Such discretion, however, is not unlimited. I do not believe that I would be warranted in substituting my judgment for the judgment of the company in such a matter so long as the exercise of its judgment is reasonable." Arbitrator Edes then concluded that requiring a high school education of Machinery Repairman B Trainees is unreasonable.

Arbitrator Edes rejected the contention of Citizens Gas that a high school education would make an applicant more trainable and would confer certain basic skills necessary to the position. He noted that some school systems have reduced their diplomas to little more than certificates of attendance. From the fact that some high school graduates would be unqualified for the Machinery Repairman B position, Arbitrator Edes concluded that the fact that Mullens had only an eighth-grade education did not render him unqualified for the job.

Citizens Gas filed its Motion To Vacate And Set Aside Arbitration Award with the Marion Superior Court on April 28, 1980. The motion sought avoidance of the award for the reason that the arbitrator went beyond the scope of the contract, submission, and evidence before him, thereby exceeding his powers.

The trial court's findings of fact, conclusions of law, and judgment, entered January 9, 1981, determined that the job description for the position of Machinery Repairman B Trainee had been fixed by Citizens Gas in accordance with the contract without protest from the IBEW, and therefore "[t]he Award of the Arbitrator is unreasonable and exceeds his powers and the Award cannot be corrected without affecting the merits of the decision." The trial court therefore vacated the award.

The IBEW had counter-claimed for confirmation of the award, and, on the theory that Citizens Gas's motion to set aside was an unreasonable evasion of the award, for reasonable attorney fees incurred by the union. These claims were denied.

## ISSUES

The IBEW presents what amount to two issues:

1. Did the trial court err in overturning the award on the ground that the arbitrator exceeded his authority?

2. Did the trial court err in denying attorney fees to the IBEW?

## DECISION

### REVIEW OF APPLICABLE LAW

A survey of the topic *Arbitration* in the Indiana Digest shows that the lion's share of Indiana law on arbitration was made in the 19th century. Indeed, it appears that Indiana courts had nothing at all to say on the matter from 1920 until 1975. Accordingly, we feel that some review of the subject is in order.

Arbitration, at common law, was a matter of contract; an agreement to submit a dispute to an arbitrator, and to abide by his decision, estopped the parties seeking a second resolution in the courts:

These authorities proceed upon the ground, "if judges chosen by the parties erroneously decide a question of law the Court will abide the decision." In this instance the demurrer concedes that the award contains a rate of interest not allowable by the statute; and the arbitrators, in making such allowance, may have misjudged the law; but the weight of the authority, no doubt, is, that an erroneous decision, thus made, cannot be set up in bar of an action on the award. [citations omitted]

*Hays v. Miller,* (1859) 12 Ind. 187, 191.

Awards were not reviewable by courts for errors in judgment or mistakes of fact or law. *Goodwine v. Miller,* (1869) 32 Ind. 419. And it was to be presumed that the arbitrator acted within the bounds of his jurisdiction as conferred by the arbitration agreement. *Goodwine, supra; McCullough v. McCullough,* (1859) 12 Ind. 487.

The deference given arbitration by the common law stopped, however, when parties agreed to arbitrate disputes which might arise at some future date. This was seen as ousting the courts of jurisdiction of the parties by setting up private courts of general jurisdiction, and such agreements were held to be unenforceable. *Supreme Council of the Order of Chosen Friends v. Forsinger,* (1890) 125 Ind. 52, 25 N.E. 129; *Kistler v. Indianapolis & St. Louis Railroad Company,* (1882) 88 Ind. 460. This rule has since been abrogated by the enactment of the Uniform Arbitration Act, IC 34–4–2–1 *et seq. Flood v. Country Mutual Insurance Company,* (1968) 41 Ill.2d 91, 242 N.E.2d 149.

"The Act does not, however, control which issues are subject to arbitration; this is governed by the arbitration agreement between the parties." *Flood, supra,* 41 Ill.2d at 93, 242 N.E.2d at 151. "It is the

agreement between the parties submitting the matter in controversy for arbitration which fixes the conditions, limitations, and restrictions to be observed by the arbitrator in making his award: 'Despite the salutary purpose of [the Uniform Act], parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication.'" *Board of Education of Community Unit School District Number 4, Champaign County, v. Champaign Education Association*, (1973) 15 Ill.App.3d 335, 340, 304 N.E.2d 138, 142, citing *Flood, supra.* Of the five causes for vacating an arbitration award enumerated in section 13(a) of the Uniform Arbitration Act[4] only one, "the arbitrators exceed[ed] their powers and the award cannot be corrected without affecting the merits of the decisions upon the controversy submitted," requires any review of the substance of an award. Even this ground is narrowly circumscribed, for it amounts to an attack on the arbitrator's jurisdiction and does not attempt to limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted.

So we proceed to determine whether the arbitrator exceeded his authority thereby justifying the trial court's action in vacating the award.

ISSUE ONE—Did the trial court err in overturning the award on the ground that the arbitrator exceeded his authority?

PARTIES' CONTENTIONS—Citizens Gas points out that the validity or reasonableness of the qualifications set for the position of Machinery Repairman B Trainee were not, and could not have been, submitted to the arbitrator in this grievance proceeding. It also urges that the arbitrator had no evidence before him by which to judge the reasonableness of the requirement of a high school diploma.

The IBEW brandishes the deference which courts must give to arbitrators' decisions, and argues that we must therefore characterize the award, not as removing the requirement of a high school diploma from an already-established job description, but as exercising the arbitrator's broad powers to construe the contract and to discover the hitherto-unspecified qualifications for the trainee position. The IBEW suggests that even if the award amounts to a review of a job description after the limitation period in the contract, it is not proper for Citizens Gas to raise this issue for the first time before the courts, never having brought the job-description provisions of the contract to the attention of Arbitrator Edes. Finally, the IBEW points out that section 13 of the Uniform Act does not make unreasonableness, *per se*, grounds for vacating an award and argues that the trial court therefore erred in setting the award aside as unreasonable.

CONCLUSION—The trial court did not err in concluding that the arbitrator exceeded his authority.

An arbitrator's award may be set aside only for grounds specified in section 13(a) of the Indiana Uniform Arbitration Act, IC 34–4–2–13(a). *Indianapolis Public Trans-*

---

4. 34–4–2–13 [3–240]. Vacating an award.—(a) Upon application of a party, the court shall vacate an award where: (1) The award was procured by corruption or fraud; (2) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; (3) the arbitrators exceeding [exceeded] their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; (4) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refus- ed to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 6 [34–4–2–6] of this act, as to prejudice substantially the rights of a party; or (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section 3 [34–4–2–3] and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

*portation Company v. Amalgamated Transit Union Local 1070*, (1981) Ind.App., 414 N.E.2d 966. At trial, Citizens Gas carried the burden of proving that the arbitrator exceeded his "powers and the award cannot be corrected without affecting the merits of the decisions upon the controversy submitted:" IC 34–4–2–13(a)(3); *see Indianapolis Public Transportation, supra.* The Indiana Act places an even heavier burden upon the party seeking to vacate than does the original Act, for it adds the requirement that the award not be correctable without affecting the merits of the decision. *Compare* IC 34–4–2–13(a)(3) *with* Official Draft, Uniform Arbitration Act (1955) § 13(a)(3), 7 ULA 68.

■ Arbitrariness, capriciousness, and contravention of the evidence are not in themselves grounds for vacating an arbitrator's award.[5] This proposition follows from two premises. First, an arbitrator is not restricted to the evidence submitted by the parties in making his decision, but may base his decision on his own knowledge and experience—things which by their nature cannot be reduced to a record suitable for review by courts. *See* 6 CJS *Arbitration* § 85, p. 305, and cases cited therein. Therefore it is possible that a rational, well-reasoned award may be based on valid considerations which nonetheless were not presented by either party.

Second, as we have noted before, mistakes of fact and errors of judgment have never been grounds for vacating awards, *Hays v. Miller, supra,* and the Uniform Act excludes any such substantive ground for vacating. IC 34–4–2–13(a); *Indianapolis Public Transportation Corporation, supra.*

For these reasons, the IBEW is correct in its argument that Arbitrator Edes's award could not have been overturned merely because it was unreasonable, and Citizens Gas's reliance upon the absence of evidence

to support the award is misplaced. It may very well be illogical to conclude that because some high school graduates are unqualified, a man with an eighth grade education is qualified; but this is an error in judgment only, which is beyond the power of the courts to correct.

■ Nonetheless, an arbitrator's discretion is limited by the bounds of the agreement from which he draws his authority. *Local 134, IBEW, v. Chicago Transit Authority,* (1979) 68 Ill.App.3d 855, 25 Ill.Dec. 32, 35, 386 N.E.2d 303, 306; *Board of Education v. Champaign Education Association, supra.* The courts may vacate awards that extend beyond the contractual scope of arbitration, and arbitrators are expected to be aware of those limits. *Local 134, IBEW, supra.*

■ In this case, Arbitrator Edes himself acknowledged that a high school diploma was specified as a qualification for the position of Machinery Repairman B Trainee: The award of the position to Mullens was based on the finding that the requirement was unreasonable, not that there was no such requirement. Arbitrator Edes's award *explicitly* acknowledges that Mullens does not meet the qualifications specified in the applicable job description; rather than meet the terms of the submitted question of whether Mullens met the required standard for the trainee position, Arbitrator Edes chose instead to pass upon the required standards themselves.

In so doing, he exceeded his authority. Section 12.4 of the Collective Bargaining Agreement sets out the method by which the IBEW may seek arbitration of job descriptions, including qualifications. That this procedure must be followed within thirty days convinces us that prompt arbitration was meant to be an exclusive remedy, and that job descriptions are to be deemed final if the IBEW does not promptly file an objection.

---

5. It goes without saying that evidence showing arbitrariness, capriciousness, or contravention of the evidence would be probative of fraud, partiality, or corruption, which are grounds for vacating an award. IC 34–4–2–13(a)(1), (2).

No such objection was filed to the job description which Arbitrator Edes found was applicable to Machinery Repairman B Trainee. The issue which Arbitrator Edes decided in his award had been foreclosed in 1975.

The IBEW objects that the issue of the arbitrability of the job description was never properly raised in the course of arbitration, and therefore must be deemed waived when raised for the first time in the courts. The IBEW offers no authority to support this argument, and we can find none. It may be that there are cases in which a court, in reviewing an award, would estop a party from raising arbitrability for the first time in its petition to vacate. This is not such a case: The IBEW presented the dispute to the arbitrator in language that did not suggest an attack upon an established job description; the evidence and arguments directed to the job description appear to have gone solely to the question of whether the qualifications for Machinery Repairman B applied to the position of Machinery Repairman B Trainee at all, and not whether such qualifications were reasonable; the qualifications themselves were attacked for the first time only in the award itself; the Collective Bargaining Agreement—the agreement to arbitrate—appeared in plain language to exclude the issue of the reasonableness of the job description; Arbitrator Edes could reasonably have been expected to have read that language, as it is a part of the contract that gives him his authority; and Arbitrator Edes was put on particular notice by the requirement of paragraph 7.2.2 that his decision should "be consistent with and limited to the terms of this Agreement."

The IBEW also objects to the trial court's characterizing the award as "unreasonable," arguing that since unreasonableness is not a ground for vacating an award un-

der the Uniform Act, the trial court committed reversible error. The grounds cited by the trial court for vacating the award were that "the award of the arbitrator is unreasonable and exceeds his powers and the award cannot be corrected without affecting the merits of the decision." The last two of these three grounds are found in IC 34-4-2-13(a)(3), and constitute valid grounds for vacating the award. The additional finding, that the award was unreasonable, does not contradict the other two. The trial court's conclusion of law that the award was unreasonable may have no legal effect, but such a finding under these circumstances does not prejudice the IBEW; the error was harmless. T.R. 61.

The trial court correctly concluded that the arbitrator had exceeded his authority.

## II.

ISSUE TWO—Did the trial court err in denying attorney fees to the IBEW?

The IBEW cites a number of federal cases in which employers seeking to vacate arbitrators' awards were required to pay the defendant unions' attorney fees.[6] These cases rely upon "national labor policy" to justify assessing defendants' attorney fees against companies who attempt to avoid the arbitration process by filing frivolous petitions.

Citizens Gas's petition in this case, so far from being frivolous, was meritorious. We need not consider this issue any further.

The judgment of the trial court is in all things affirmed.

SHIELDS and SULLIVAN, JJ., concur.

---

**6.** The IBEW has not favored us with complete citations to these cases as outlined in A.R. 8.2(B)(1) and required by A.R. 8.3(A)(7). A citation such as *"Retail Clerks, Local 201 v. Lane County Independent Grocery Employers'* *Committee,* 70 LC ¶ 13,280 (D.Or.1972)," implies only that the case is to be found somewhere in generally-available reporter services.